[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15931

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 17, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00317-CV-WS-M

THE OHIO CASUALTY INSURANCE COMPANY,

Plaintiff
Counter Defendant
Appellee,

versus

HOLCIM (US), INC.,
EDWARD J. THIERRY, JR.
DENNIS R. ODOM,

Defendants
Counter Claimants
Appellants,

PATRICIA WHITE,
et al.,

Defendants,

INDUSTRIAL SERVICES OF MOBILE, INC.,

Counter Defendant
Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(November 17, 2008)**

Before BARKETT and WILSON, Circuit Judges, and POGUE,[*] Judge.

PER CURIAM:

Tort plaintiffs Ronald and Patricia White sued appellant Holcim (US) Inc. ("Holcim") in Alabama state court, exclusively alleging claims of wrongdoing on the part of Holcim. Having settled the lawsuit, Holcim now seeks contractual indemnification from Ronald White's employer, Industrial Services of Mobile, Inc. ("ISOM"). Holcim alleges breach of contract under their "Supply Agreement," as ISOM "fail[ed] to pay the portion of the settlement which was not paid by [ISOM's general liability insurance carrier]." Holcim also alleged breach of contract against The Ohio Casualty Insurance Co. ("Ohio Casualty"), ISOM's excess insurer, for "failing to pay its portion of the settlement." The district court granted summary judgment in favor of ISOM and Ohio Casualty. Holcim appealed.

**BACKGROUND**

_____

[*]Honorable Donald C. Pogue, United States Court of International Trade Judge, sitting by designation.

2

Holcim operates a cement manufacturing plant in Theodore, Alabama. Holcim hired ISOM, a general contractor in the industrial sector, to work on Holcim's "Raw Silos Project" at its Theodore facility. On February 21, 2003, Holcim and ISOM entered into a contract entitled "Supply Agreement" ("Agreement"), which provided that ISOM would indemnify and hold harmless Holcim:

> from any and all claims, demands, actions, penalties, fines, losses, costs or other liabilities . . . arising out of or resulting from [ISOM's] breach of warranty or performance of this agreement or any act or omission of [ISOM], whether occurring on [Holcim's] premises or elsewhere. However, [ISOM] shall have no obligation to [Holcim] to the extent such losses are attributable to the negligence or willful misconduct of [Holcim].

The Agreement further provided that ISOM promised to carry worker's compensation, employer's liability, and commercial general liability insurance, and to furnish Holcim with certificates "evidencing the existence of the aforementioned insurance naming [Holcim] as additional insured." Holcim's corporate counsel drafted the Agreement.

On February 23, 2003, ISOM employee Ronald White suffered serious injuries when he fell through a hole from the second level of a silo while working on the Raw Silos Project at the Holcim cement plant.[1] On October 2, 2003, White

---

[1]Throughout its brief, Holcim asserts that ISOM employees created the hole.

and his wife filed suit in Alabama state court against Holcim and two of its employees (collectively, "Holcim"), alleging negligence, willfulness and wantonness, and a loss of consortium claim (the "*White* action"). An amended complaint additionally alleged that Holcim acted negligently and/or wantonly in performing duties that it voluntarily undertook and that White was a third-party beneficiary of ISOM's and Holcim's Agreement. The Whites did not name ISOM as a defendant.[2]

Holcim demanded that ISOM defend and indemnify it in the *White* action. ISOM's general liability carrier, First Mercury Insurance Company, appointed counsel to represent Holcim in the *White* action. ISOM's excess insurer, Ohio Casualty, disclaimed coverage for Holcim's demand of indemnity. On May 24, 2006, the Whites and Holcim proceeded to court-ordered mediation. Holcim settled with the Whites for $5 million: First Mercury contributed its policy limit of $1 million; Holcim itself paid $1 million; and nonparty Great American Alliance Insurance Company, one of Holcim's excess carriers, paid $3 million. Ohio Casualty attended the mediation but ISOM did not. Neither Ohio Casualty nor ISOM contributed any funds to the settlement.

---

[2]As discussed *infra*, ISOM makes much of the fact that the Whites only sued Holcim for its own negligence. The district court, however, noted that the exclusivity of Alabama worker's compensation law would have barred any claim(s) made by the Whites against ISOM, hence explaining why the Whites did not name ISOM as a defendant.

Approximately one week before the mediation in the *White* action, on May 18, 2006, Ohio Casualty filed the instant declaratory judgment action in the United States District Court for the Southern District of Alabama against Holcim. Ohio Casualty sought a declaration that it had no duty to defend or indemnify Holcim in the *White* action under a commercial umbrella policy that Ohio Casualty issued to ISOM for the time period encompassing White's accident. Holcim filed a counterclaim against Ohio Casualty and joined ISOM, seeking to recover all or a portion of the $4 million paid in the *White* action.[3] Holcim alleged that ISOM had breached its Agreement to indemnify and hold harmless Holcim by failing to fund the settlement of the *White* action. In turn, Holcim alleged that Ohio Casualty had breached its contractual obligation by failing to recognize Holcim as an additional insured and by failing to contribute to the settlement.[4]

ISOM and Ohio Casualty moved for summary judgment on the grounds that, as a matter of law, neither is obligated to contribute any funds to the *White* settlement. The district court agreed and granted summary judgment. As to ISOM, relying on Alabama law requiring "clear and unequivocal language" in an indemnity agreement to require an indemnitor to indemnify an indemnitee for its

---

[3]Holcim represented in its counterclaim that its excess insurer authorized it to seek the recovery of the entire amount paid in the *White* action.

[4]Holcim also alleged a common law indemnity claim against ISOM. Holcim, however, did not pursue that claim on appeal.

own negligence, the district court found that the indemnification provision "unequivocally states that ISOM [has] no obligation to indemnify Holcim against any losses 'to the extent such losses are attributable to the negligence or willful misconduct of [Holcim].'" *Ohio Cas. Ins. Co. v. Holcim (US) Inc.*, Civil Action No. 06-0317-WS-M, 2007 WL 2807570, at *14 (S.D. Ala. Sept. 24, 2007) (order granting summary judgment) ("*Ohio Casualty*"). The district court concluded that an inspection of the complaint in the *White* action revealed that the Whites sued Holcim for its negligence: "Nothing in the state-court complaint states or can reasonably be read as suggesting that the Whites sought to hold Holcim liable through some sort of pass-through or vicarious liability for ISOM's negligence or wrongdoing; rather the state court pleadings are quite clear that the Whites sought relief from Holcim for the negligent, willful, and wanton acts and omissions of Holcim itself." *Id*. at *15. Thus, the district court held that "it would defy logic and common sense to find that those 'losses' (*i.e.*, the settlement payments) are attributable to anything other than [Holcim's] own wrongdoing" and granted summary judgment in favor of ISOM. *Id.* at *17. As to Ohio Casualty, although the district court opined that Holcim could be deemed an "additional insured" under ISOM's policy with Ohio Casualty, because it found that ISOM was not liable to Holcim, it concluded that Ohio Casualty likewise was not liable to

6

Holcim.  *Id.* at *22.[5]  Holcim now appeals the district court's grant of summary

judgment in favor of ISOM and Ohio Casualty.

## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*.  *Beshers v.*

*Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007).  We resolve all genuine issues of

material fact in favor of the non-moving party.  *Id.*  We will reverse a grant of

summary judgment and remand for further proceedings if we find a genuine issue

of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  We

review a district court's interpretation of a contract provision *de novo*.  *LaFarge*

*Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997).  Because this

appeal arises under diversity jurisdiction, we apply Alabama law.  *Twin City Fire*

*Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1258 (11th Cir. 2007).

## DISCUSSION

This appeal presents two discrete issues: (1) whether the district court erred

in finding that the phrase "to the extent" was unambiguous and that the Agreement

only provided coverage if Holcim was not negligent; and (2) whether the district

court erred in limiting its analysis (with respect to attributable loss to the

negligence and willful misconduct of Holcim) to the plain face of the underlying

[5]The district court declined to determine whether Holcim's claims were barred by Ohio Casualty's "Cross Suits Exclusion" clause.  *Id*. at 23 n. 23.

7

pleadings. Having reviewed the parties' briefs and the record and having heard their positions at oral argument, we find that the instant appeal requires us to delve into areas of Alabama law that appear unsettled, and hence we certify these questions to the Alabama Supreme Court. We will address each question in turn.

I.       *"[T]o the extent"*

The district court held that the terms of the indemnification provision in the Agreement were "clear and unequivocal" with respect to the contested language: "to the extent such losses are attributable to the negligence or willful misconduct of [Holcim]." *Ohio Casualty*, 2007 WL 2807570, at *14. Because it found this language to be unambiguous, the district court proceeded to construe the contract and grant summary judgment in favor of ISOM.

Holcim frames the "threshold issue" as "whether the indemnity language provides indemnification for the combined negligence of Holcim and ISOM, whereby ISOM owes Holcim indemnification for ISOM's actions in causing the damages suffered by White, even though Holcim may also have been negligent." Holcim asserts that "to the extent" is unambiguous in that it provides for an allocation of responsibility between ISOM and Holcim where the loss resulted from the combined negligence of the parties. ISOM disagrees, responding that the indemnity provision does not "specifically direct the parties to undertake such an

8

allocation, nor does it provide a manner or method for doing so." In other words, ISOM asserts that the language is also unambiguous, but in accordance with the district court's finding that ISOM need only indemnify Holcim "if those settlement proceeds are not losses attributable to Holcim's negligence or willful misconduct . . . ." *Id.* at *14.

"The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 308 (Ala. 1999). "A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc.*, 914 So. 2d 344, 357 (Ala. 2005) (citing *Alfa Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 684 So. 2d 1295, 1299-1300 (Ala. 1996)).

In our view, the phrase "to the extent . . . attributable . . . to [Holcim]" as written in this indemnification provision is ambiguous. Two circuits have reached the same conclusion in interpreting similar albeit not identical language. *See Olin Corp. v. Yeargin Inc.*, 146 F.3d 398, 404 (6th Cir. 1998) ("The phrase 'to the extent' could be interpreted to impose a percentage limitation on [the indemnitor's] duty to indemnify. Or, 'to the extent,' read with [other contract language], could be construed to mean that [the indemnitor's] duty is triggered only if it is at least partly at fault."); *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co. Inc.*, 89

F.3d 243, 246-47 (5th Cir. 1996) (providing that two "reasonable interpretations" of the contract language "except to the extent it is caused in part by [the indemnitee]" exist, i.e., indemnification only if indemnitee was "*not in any way responsible* for an underlying claim" or "the indemnity provision incorporates the principles of comparative negligence") (emphasis in original).[6]

In the same manner here, Holcim argues that "to the extent . . . attributable . . . to [Holcim]" incorporates the principles of comparative negligence while ISOM (in line with the district court's reading) argues that it need not indemnify if Holcim was negligent. We find that each party's interpretation of the indemnification provision is reasonably plausible in that the phrase "to the extent . . . attributable . . . to [Holcim]" is susceptible to more than one meaning, which gives rise to an ambiguity.

When resolving the found ambiguity, Alabama law directs us to employ established rules of contract construction. *See Extermitech, Inc. v. Glasscock, Inc.*, 951 So. 2d 689, 694 (Ala. 2006) (providing that "as articulated in *Alfa Life Insurance Corp. v. Johnson*, 822 So. 2d 400, 404-05 (Ala. 2001), the court, as a matter of law, should apply rules of construction and attempt to resolve any

_____

[6]*See also Braegelmann v. Horizon Dev. Co.*, 371 N.W. 2d 644, 646 (Minn. Ct. App. 1985) (providing that the phrase "indemnify and hold harmless" along with "to the extent caused" "suggests a 'comparative negligence' construction under which each party is accountable 'to the extent' their negligence contributes to the injury").

10

ambiguity in the contract before looking to factual issues to resolve the ambiguity"); *FabArc Steel Supply*, 914 So. 2d at 357-62.  In doing so, however, another problem arises:  if we construe the ambiguity in favor of Holcim's reading, it is unclear whether Alabama law allows recovery under a comparative fault or negligence theory within a contractual indemnity provision.  *Compare Sherman Concrete Pipe Mach., Inc. v. Gadsen Concrete & Metal Pipe Co.*, 335 So. 2d 125, 127 (Ala. 1976) (distinguishing between contribution and indemnity and providing that "indemnity seeks to transfer the entire loss of one tortfeasor to another who, in equity and justice should bear it. . . .  And, in the case of indemnity, where joint tortfeasors are equally at fault, i.e. where each is chargeable with active or affirmative negligence contributing to the injury, for which recovery was had, neither is entitled to indemnity from the other, although he may be entitled to contribution.") *with Humana Med. Corp. v. Bagby Elevator Co., Inc.*, 653 So. 2d 972, 974 (Ala. 1995) (providing that "when one joint tort-feasor has agreed in writing to indemnify the other joint tort-feasor, even for claims based on the other's own negligence, the agreement, if otherwise valid, can be upheld and enforced") *and United States v. Seckinger*, 397 U.S. 203, 216 (1970) (applying federal law and stating that "[i]n short, [indemnitor] will be responsible for the damages caused by its negligence; similarly, responsibility will fall upon

11

[indemnitee] to the extent that it was negligent.").[7]  Because we find no controlling precedent on point under Alabama law and because the resolution of this appeal hinges on this unsettled aspect of Alabama law, we certify this issue to the Alabama Supreme Court.

II.     *Looking behind the Complaint in the White action*

Part and parcel to its finding that ISOM need only indemnify Holcim if Holcim were not negligent, the district court concluded that because the pleadings in the *White* action only alleged negligence against Holcim and not ISOM, Holcim was not entitled to indemnification under the Agreement.

Holcim argues that the district court should consider the underlying facts of the *White* action as opposed to only the allegations in the complaint.  ISOM responds that the district court correctly limited its analysis to the plain face of the complaint in the *White* action, which only alleged negligence against Holcim.

---

[7]At least two states allow recovery under a concurrent negligence or fault theory within a contractual indemnity claim.  *See, e.g., Delle Donne & Assoc., LLP v. Millar Elevator Serv. Co.*, 840 A.2d 1244, 1253-54 (Del. 2004) (providing that "existing Delaware law gives a party the right to contractual indemnity where there is concurrent negligence between the indemnitor and the indemnitee.  Existing Delaware law also permits an indemnitee to recover partial contractual indemnity for losses caused by the indemnitor's negligence, and it permits that partial contractual indemnity to be measured by the percentages of liability determined by a jury.") (footnotes omitted); *Kroger Co. v. Giem*, 387 S.W.2d 620, 626 (Tenn. 1964) (providing that "it is nearly a universal rule that there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by clear and unequivocal terms; and general words will not be read as expressing such an intent") (citations and internal quotation omitted).

Neither of the parties have presented a case directly on point: whether a court may look behind (or beyond) a complaint from an underlying action to determine coverage of an indemnity provision in the subsequent indemnification action between the indemnitor and indemnitee. While the Alabama Supreme Court has appeared to allow a court to look behind the pleadings in interpreting a similar (but not identical) provision,[8] *see FabArc*, 914 So. 2d at 361 (rejecting the indemnitor's "argument that the allegation provision could be triggered only by the filing o[f] an action naming it as a defendant; all the provision requires is that there be a charge or allegation of fault on the part of [indemnitor]"), the district court relied on persuasive authority from other jurisdictions establishing to the contrary, *see Ohio Casualty*, 2007 WL 2807570, at \*9-10.[9] Because we find no clear, controlling precedent on point under Alabama law, we certify this issue to the Alabama Supreme Court as well.

## CERTIFICATION

[8]We also note that, in the related context of insurance, Alabama law allows a court to look behind a complaint. *See Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1066 (Ala. 2003) ("The insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify.") (citations omitted).

[9]*See e.g., McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 578 (Iowa 2002) ("[A]n indemnitee cannot transform the underlying claim by the injured party into a different lawsuit by making allegations of negligence against the indemnitor in a subsequent action for indemnity."). *But see, e.g.*, *Williams v. Midland Constructors*, 221 F. Supp. 400, 403 (E.D. Ark. 1963) (providing that while the original complaint between injured employee and indemnitee only alleged indemnitee's negligence, that "does not change the fact that the actual breach of duty was committed by [indemnitor]").

13

"When substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law." *Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir.1996) (per curiam) (citation omitted). "Only through certification can federal courts get definitive answers to unsettled state law questions. Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law." *Id*. In this case, we find sufficient cause to certify two questions to the Alabama Supreme Court with respect to the interpretation of an indemnification agreement.[10]

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE. We respectfully certify the following questions TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES

---

[10]As to Ohio Casualty, the district court found that Holcim did not qualify as an additional insured by virtue of an insured contract because the insured contract here (i.e., the Agreement) excluded the type of loss for which Holcim demanded coverage. As such, our review of the district court's ruling as to Ohio Casualty hinges on the Alabama Supreme Court's answers to the certified questions with respect to ISOM.

14

THEREOF:

1. Whether, under Alabama law, an indemnitee may enforce an indemnification provision and recover damages from an indemnitor resulting from the combined or concurrent fault or negligence of the indemnitee and indemnitor?

2. Whether, under Alabama law, a court may look behind (or beyond) the pleadings (in particular, the complaint) of an underlying tort action in determining the application of an indemnification provision between an indemnitor and indemnitee?

The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

**QUESTIONS CERTIFIED**.