SHAW, Justice.
The United States Court of Appeals for the Eleventh Circuit has certified to this Court, pursuant to Rule 18, Ala. R.App. P., two questions:
“1. Whether, under Alabama law, an indemnitee may enforce an indemnification provision and recover damages from an indemnitor resulting from the combined or concurrent fault or negligence of the indemnitee and indemnitor?
“2. Whether, under Alabama law, a court may look behind (or beyond) the pleadings (in particular, the complaint) of an underlying tort action in determining the application of an indemnification provision between an indemnitor and in-demnitee?”

Facts and Procedural History

In its certification to this Court, the Eleventh Circuit Court of Appeals provided the following background information:
“[Holcim (US), Inc. (‘Holcim’),] operates a cement manufacturing plant in Theodore, Alabama. Holcim hired [Industrial Services of Mobile, Inc. (‘ISOM’) ], a general contractor in the industrial sector, to work on Holcim’s ‘Raw Silos Project’ at its Theodore facility. On February 21, 2003, Holcim and ISOM entered into a contract entitled ‘Supply Agreement’ (‘Agreement’), which provided that ISOM would indemnify and hold harmless Holcim:
“ ‘from any and all claims, demands, actions, penalties, fines, losses, costs or other liabilities ... arising out of or resulting from [ISOM’s] breach of warranty or performance of this agreement or any act or omission of [ISOM], whether occurring on [Hol-cim’s] premises or elsewhere. However, [ISOM] shall have no obligation to [Holcim] to the extent such losses are attributable to the negligence or willful misconduct of [Holcim].’
“The Agreement further provided that ISOM promised to carry worker’s compensation, employer’s liability, and commercial general liability insurance, and to furnish Holcim with certificates ‘evidencing the existence of the aforementioned insurance naming [Holcim] as additional insured.’ Holcim’s corporate counsel drafted the Agreement.
“On February 23, 2003, ISOM employee Ronald White suffered serious injuries when he fell through a hole from the second level of a silo while working on the Raw Silos Project at the Holcim cement plant.[1] On October 2, 2003, White and his wife filed suit in Alabama state court against Holcim and two of its employees [Edward J. Thierry, Jr., and Dennis R. Odom] (collectively, ‘Holcim’), alleging negligence, willfulness and wantonness, and a loss of consortium claim (the ‘White action’). An amended complaint additionally alleged that Holcim acted negligently and/or wantonly in performing duties that it voluntarily undertook and that White was a third-party beneficiary of ISOM’s and Hol-cim’s Agreement. The Whites did not name ISOM as a defendant.[2]
“Holcim demanded that ISOM defend and indemnify it in the White action. ISOM’s general liability carrier, First Mercury Insurance Company, appointed counsel to represent Holcim in the White action. ISOM’s excess insurer, Ohio Casualty, disclaimed coverage for Holcim’s demand of indemnity. On May 24, 2006, the Whites and Holcim proceeded to court-ordered mediation. *725 Holcim settled with the Whites for $5 million: First Mercury contributed its policy limit of $1 million; Holcim itself paid $1 million; and nonparty Great American Alliance Insurance Company, one of Holcim’s excess carriers, paid $3 million. Ohio Casualty attended the mediation but ISOM did not. Neither Ohio Casualty nor ISOM contributed any funds to the settlement.
“Approximately one week before the mediation in the White action, on May 18, 2006, Ohio Casualty filed the instant declaratory judgment action in the United States District Court for the Southern District of Alabama against Holcim. Ohio Casualty sought a declaration that it had no duty to defend or indemnify Holcim in the White action under a commercial umbrella policy that Ohio Casualty issued to ISOM for the time period encompassing White’s accident. Holcim filed a counterclaim against Ohio Casualty and joined ISOM, seeking to recover all or a portion of the $4 million paid in the White action.[3] Holcim alleged that ISOM had breached its Agreement to indemnify and hold harmless Holcim by failing to fund the settlement of the White action. In turn, Holcim alleged that Ohio Casualty had breached its contractual obligation by failing to recognize Holcim as an additional insured and by failing to contribute to the settlement.[4]
“ISOM and Ohio Casualty moved for summary judgment on the grounds that, as a matter of law, neither is obligated to contribute any funds to the White settlement. The district court agreed and granted summary judgment. As to ISOM, relying on Alabama law requiring ‘clear and unequivocal language’ in an indemnity agreement to require an in-demnitor to indemnify an indemnitee for its own negligence, the district court found that the indemnification provision ‘unequivocally states that ISOM [has] no obligation to indemnify Holcim against any losses “to the extent such losses are attributable to the negligence or willful misconduct of [Holcim].”’ Ohio Cas. Ins. Co. v. Holcim (US) Inc., Civil Action No. 06-0317-WS-M (S.D.Ala. Sept. 24, 2007) (order granting summary judgment) (‘Ohio Casualty ’) [not reported in F.Supp.2d]. The district court concluded that an inspection of the complaint in the White action revealed that the Whites sued Holcim for its negligence: ‘Nothing in the state-court complaint states or can reasonably be read as suggesting that the Whites sought to hold Holcim liable through some sort of pass-through or vicarious liability for ISOM’s negligence or wrongdoing; rather the state court pleadings are quite clear that the Whites sought relief from Holcim for the negligent, willful, and wanton acts and omissions of Holcim itself.’ Id. Thus, the district court held that ‘it would defy logic and common sense to find that those “losses” (i.e., the settlement payments) are attributable to anything other than [Holcim’s] own wrongdoing’ and granted summary judgment in favor of ISOM. Id. As to Ohio Casualty, although the district court opined that Holcim could be deemed an ‘additional insured’ under ISOM’s policy with Ohio Casualty, because it found that ISOM was not liable to Holcim, it concluded that Ohio Casualty likewise was not liable to Holcim. Id.[5] Holcim now appeals the district court’s grant of summary judgment in favor of ISOM and Ohio Casualty.
*726 Ohio Cas. Ins. Co. v. Holcim (US), Inc., 548 F.3d 1352, 1353-56 (11th Cir.2008).

Discussion

I. Indemnification

Holcim and ISOM argued before the Eleventh Circuit Court of Appeals different meanings for the language of the underlying indemnity provision in the supply agreement between ISOM and Holcim: “Holcim frames the ‘threshold issue’ as ‘whether the indemnity language provides indemnification for the combined negligence of Holcim and ISOM, whereby ISOM owes Holcim indemnification for ISOM’s actions in causing the damages suffered by White, even though Holcim may also have been negligent.’ ” 548 F.3d at 1356. The court further noted that Holcim argued “that ‘to the extent’ is unambiguous in that it provides for an allocation of responsibility between ISOM and Holcim where the loss resulted from the combined negligence of the parties.” Id. The court noted that “ISOM disagrees, responding that the indemnity provision does not ‘specifically direct the parties to undertake such an allocation, nor does it provide a manner or method for doing so.’ ” Id. The court then stated that “each party’s interpretation of the indemnification provision is reasonably plausible” and, thus, held that the indemnity provision was ambiguous, but it also stated:
“[I]f we construe the ambiguity in favor of Holcim’s reading, it is unclear whether Alabama law allows recovery under a comparative fault or negligence theory within a contractual indemnity provision .... Because we find no controlling precedent on point under Alabama law and because the resolution of this appeal hinges on this unsettled aspect of Alabama law, we certify this issue to the Alabama Supreme Court.”
548 F.3d at 1357-58. The Eleventh Circuit Court of Appeals thus certified its first question: “Whether, under Alabama law, an indemnitee may enforce an indemnification provision and recover damages from an indemnitor resulting from the combined or concurrent fault or negligence of the indemnitee and indemnitor?”
The certification order appears to contemplate broader issues than the issue stated in the certified question as necessary for the Eleventh Circuit’s resolution of this case. The Eleventh Circuit has previously noted that the “ ‘particular phrasing used in the certified question is not to restrict the [Alabama] Supreme Court’s consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case.’ ” Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 116 F.3d 1406, 1414 (11th Cir. 1997) (quoting Martinez v. Rodriquez, 394 F.2d 156, 159 n. 6 (5th Cir.1968) (citations omitted)). Further, this Court will rephrase a question certified to it in order to address the “basic issue implicated by th[e] question” and “contemplated by the *727 Court of Appeals in its certification.” John Deere Co. v. Gamble, 523 So.2d 95, 99 (Ala.1988). We therefore rephrase the question as follows: Whether, under Alabama law, an indemnitee may enforce an indemnification provision calling for the allocation of an obligation or damages based on the respective fault of the indem-nitee and indemnitor? This question addresses both the issue identified by the Eleventh Circuit — whether “recovery under a comparative fault or negligence theory within a contractual indemnity provision” is permissible under Alabama law, 548 F.3d at 1357 — as well as the “threshold issue” identified by Holcim and the question certified: whether an indemnification provision may provide for indemnification where the resulting obligation or damages are the result of the combined or concurrent fault or negligence of the in-demnitee and indemnitor.
Without expressing an opinion as to the proper interpretation of the actual agreement between Holcim and ISOM, we now address this question.
This Court has previously addressed both the freedom to contract and the enforceability of indemnity agreements. Generally, under Alabama law, and with certain exceptions, joint tortfea-sors are not entitled to common-law indemnity or contribution. See Humana Medical Corp. v. Bagby Elevator Co., 653 So.2d 972, 974 (Ala.1995); Parker v. Mauldin, 353 So.2d 1375, 1377 (Ala.1977) (“The general rule is that joint tort-feasors are not entitled to indemnity or contribution.”). In Vandiver v. Pollak, 107 Ala. 547, 553, 19 So. 180, 182 (1895), this Court explained that the basis of this prohibition is found in the maxim ex turpi causa non oritur actio:
“As a general principle of the common law it is often stated that indemnity or contribution will not be enforced as between joint wrong-doers. The reason underlying the principle is, that courts will not lend assistance to him who founds his cause of action on an immoral or illegal act — ‘Ex turpi causa, oritur non actio.’ A trespasser confessing that he has injured or taken the property of another, is not entitled to the assistance of courts, instituted as well for the protection of property as for the protection of persons, to recover indemnity or contribution from his associates in the trespass.”
However, we have also long enforced, in certain cases, written “indemnity” agreements:
“The Court has, for many years, held that as between private parties, indemnity contracts are enforceable if the contract clearly indicates an intention to indemnify against the consequences of the indemnitee’s negligence, and such provision was clearly understood by the indemnitor, and there is not shown to be evidence of a disproportionate bargaining position in favor of the indemnitee.”
Industrial Tile, Inc. v. Stewart, 388 So.2d 171, 175 (Ala.1980). This rule includes the enforcement of a valid indemnity agreement that requires an indemnitor to indemnify an indemnitee for the indemni-tee’s own wrongdoing: “[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee’s own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld.” 388 So.2d at 176. See also Apel Mach. & Supply Co. v. J.E. O’Toole Eng’g Co., 548 So.2d 445, 448 (Ala.1989) (“Although the general rule in Alabama is that joint tort-feasors are not entitled to indemnity, when one joint tort-feasor agrees in writing to indemnify the other, even for claims based on the other’s own negli *728 gence, the agreement, if it is a valid indemnity agreement, can be upheld, and the joint tort-feasor can receive indemnification.”). However, “the intention to indemnify the negligence of the indemnitee must clearly appear from the wording of the instrument, but when that intention is clear, the indemnity provisions will be read and construed so as to give them the meaning the parties have expressed.” Eley v. Brunner-Lay Southern Corp., 289 Ala. 120, 124, 266 So.2d 276, 280 (1972), overruled on other grounds by Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633 (Ala.1993). Thus, Alabama law recognizes the ability of parties to enter into valid indemnity agreements that allow an indemnitee to recover from the indemnitor even for claims resulting solely from the negligence of the indemnitee.
Under long-standing Alabama law, contracts “should be construed as written,” Shoney’s LLC v. MAC East, LLC, 27 So.3d 1216, 1223 (Ala.2009), and that policy generally applies to indemnity contracts. 41 Am.Jur.2d Indemnity § 15 (2005) (“[A]n unambiguous-written indemnity contract must be enforced according to the plain and ordinary meaning of the words used in the instrument.”). Further:
“[TJhis Court has consistently held that the freedom to contract is an inviolate liberty interest.
[[Image here]]
“ ‘In Meyer v. State of Nebraska, [262 U.S. 390 (1923) ], the Supreme Court of the United States, treating what is embraced in the term “liberty” as guaranteed by the Constitution, observed: “While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract ....’”
“City of Mobile v. Rouse, 233 Ala. 622, 624, 173 So. 266, 267-68 (1937)(final emphasis added [in Shoney’s ]).
“... The ban on impairing the obligations of contracts provided in Ala. Const.1901, § 22, is obviously one that shall forever remain inviolate. Alabama caselaw has maintained the constitutional prohibition on impairing contracts by consistently upholding the intent of the contracting parties.”
Shoney’s, 27 So.3d at 1221-22.
If, under Alabama law, the maxim ex turpi causa non oritur actio provides no barrier to a contractual agreement in which an indemnitor may obligate himself or herself to pay an indemnitee’s obligation resulting from the indemnitee’s own wrongs, then, a fortiori, we see no barrier to an agreement between parties for an indemnitor to provide indemnity where the indemnitor’s own wrongs also contribute to the creation of the obligation. Similarly, we see no barrier to the freedom of parties to negotiate an agreement providing for the allocation of a proportionate part of the obligation or damages based on the parties’ respective fault.[1] As we have *729 previously stated, when “ ‘dealing with an Alabama contract entered into by two competent contracting parties in this State, ... we are mindful of our duty to avoid, if at all possible, infringing upon the rights of either or both.’ ” Shoney’s, 27 So.3d at 1223 (quoting Summers v. Adams Motor Co., 34 Ala.App. 319, 324, 39 So.2d 300, 304 (1949)). Accordingly, if two parties knowingly, clearly, and unequivocally enter into an agreement whereby they agree that the respective liability of the parties will be determined by some type of agreed-upon formula, then Alabama law will permit the enforcement of that agreement as written. We therefore answer the first question certified by the Eleventh Circuit Court of Appeals, as rephrased, in the affirmative.

II. Consideration of Facts Beyond the Pleading

The Eleventh Circuit Court of Appeals also observed that the federal district court, in determining that ISOM needed to indemnify Holcim only if Holcim was not negligent, “concluded that because the pleadings in the White action only alleged negligence against Holcim and not ISOM, Holcim was not entitled to indemnification under the Agreement.” 548 F.3d at 1358. Holcim argued that the underlying facts surrounding the White action, as opposed to only the allegations in the complaint, should be considered in determining whether ISOM was liable under the indemnity provision. Finding no clear case-law on point, the Eleventh Circuit Court of Appeals certified the following question: “Whether, under Alabama law, a court may look behind (or beyond) the pleadings (in particular, the complaint) of an underlying tort action in determining the application of an indemnification provision between an indemnitor and indemnitee?”
The Eleventh Circuit Court of Appeals acknowledged that this Court has previously found that a duty to indemnify may be triggered even when the plaintiff in the underlying action has avoided directly naming the indemnitor as a party. See FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 361 (Ala. 2005).[2] Further, in the somewhat analogous context of contractual obligations between parties to an insurance contract, we have permitted the examination of facts beyond those alleged in underlying pleadings to determine whether the plaintiffs injury was a covered event under the insurance contract. See Pacific Indem. Co. v. Run-A-Ford Co., 276 Ala. 311, 317, 161 So.2d 789, 794 (1964).
Under Alabama law governing joint and several liability, “[a] tort-feasor whose negligent act or acts proximately contribute in causing an injury may be held liable for the entire resulting loss.” Nelson Bros., Inc. v. Busby, 513 So.2d 1015, 1017 (Ala.1987) (emphasis added).[3] The fact that a complaint names one possible tortfeasor alone does not resolve whether any resulting damages in that case relate solely to the named tortfeasor’s own fault or conduct, because that tortfea-sor may be held liable for the entire loss, *730 which may be also attributable to other joint tortfeasors. Thus, in the context of an indemnity agreement allocating the responsibility for damages between an in-demnitor and indemnitee, reference only to one party in the complaint or judgment in the underlying action does not necessarily establish the proportion of that party’s respective fault.
The indemnification provision in this case does not specify or restrict the burden to prove liability for indemnification. Such liability is controlled by the terms freely agreed upon by the parties in their contract and the general law governing adherence to contractual responsibility. Thus, under Alabama law, when determining liability under an indemnity provision, a court may look beyond the complaint in the underlying action to the underlying facts shown by admissible evidence. Cf. King v. Capitol Amusement Co., 222 Ala. 115, 116, 130 So. 799, 800 (1930) (opinion on rehearing) (“That is not to say that the judgment against the indemnitee is conclusive on the indemnitor. Whether this is so depends upon the facts and circumstances, not appearing upon the record.”). Thus, we answer the second question certified by the Eleventh Circuit Court of Appeals in the affirmative.
QUESTIONS ANSWERED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ„ concur.
MURDOCK, J., concurs specially.
LYONS, J., concurs in part and concurs in the result.

“1 Throughout its brief, Holcim asserts that ISOM employees created the hole.

“2As discussed infra, ISOM makes much of the fact that the Whites only *726 sued Holcim for its own negligence. The district court, however, noted that the exclusivity of Alabama worker’s compensation law would have barred any claim(s) made by the Whites against ISOM, hence explaining why the Whites did not name ISOM as a defendant.

“3 Holcim represented in its counterclaim that its excess insurer authorized it to seek the recovery of the entire amount paid in the White action.

“4 Holcim also alleged a common law indemnity claim against ISOM. Holcim, however, did not pursue that claim on appeal.

“5 The district court declined to determine whether Holcim’s claims were barred by Ohio Casualty’s ‘Cross Suits Exclusion’ clause. Id. at n. 23.”

. It is suggested in the materials before us on these certified questions that, because Alabama law applies a contributory-negligence analysis instead of comparative fault in determining tort liability, the issue whether an indemnity agreement can call for the allocation of damages using a comparative-fault analysis is unsettled. However, comparative fault and contributory negligence govern the determination of claims as between tortfea-sors and claimants. Here, the indemnity agreement is part of a contractual relationship between two parties, and the dispute between them is not one of a claimant and a tortfeasor. However, even in the absence of a contract, the relationship between the two *729 would only be that of purported joint tortfea-sors or parties jointly liable for a debt or judgment; under common law, the obligation between joint tortfeasors is determined by the applicable law of indemnity and contribution, discussed above, not comparative fault or contributory negligence.

. In FabArc, the underlying complaint, while not naming the indemnitor as a defendant, nevertheless alleged that the indemnitor was at fault.

. The foreign authorities ISOM cites in support of its argument that courts need not look beyond the pleadings of the underlying action to determine whether indemnity is required do not appear to contemplate this principle.