**In the Matter of Henry A. STEPHENS, as Owner of a 1959 Trojan Motor Boat, Petitioner.**

**Civ. A. No. 8749.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 31, 1965.

Thomas A. Rice, Atlanta, Ga., for petitioner.

Joseph Cheeley, Buford, Ga., for respondent.

## ORDER OF COURT ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

HOOPER, District Judge.

This is an in rem proceeding by the owner of a 1959 Trojan pleasure boat to limit any liability arising from an occurrence on Lake Lanier wherein Patricia Stephens, when operating a boat belonging to petitioner, struck and killed David Stewart who was swimming in the lake. Jurisdiction is alleged under 46 U.S.C., § 183.

Wrongful death suits were instituted in a state court and this petition brought to limit petitioner's liability. While denominated a motion to dismiss, evidence has been adduced in support thereof converting it into a motion for summary judgment. The controlling question is whether or not Lake Lanier is a navigable body of water sufficient to support the admiralty jurisdiction of this Court, 28 U.S.C. § 1333; 46 U.S.C., § 183, supra.

### FINDINGS OF FACT.

1—Lake Lanier is an inland lake located entirely within the geographical boundaries of the Northern District of Georgia, and is the body of water resulting from the construction of the Buford Dam by the federal government upon the Chattahoochee River.

2—The Chattahoochee River is not in fact "a continuously navigable waterway" except at a point many miles south of Lake Lanier. It is not navigable at all north of Lake Lanier, nor south of Lake Lanier until it reaches Columbus, Georgia.[1]

3—The southern part of the Chattahoochee River up to West Point, Georgia, has been declared navigable for a distance of 201.1 miles, 33 U.S.C., § 2.31–1. While the river could undoubtedly be made navigable by the construction of locks and canalization of the river bed, such a project has been rejected in the past but is now being urged and promoted by the Atlanta Freight Bureau, as shown by report of that organization in the record. The present record does not show any commercial navigation upon Lake Lanier, but this Court takes judicial cognizance that there is a considerable amount of pleasure boating on the lake. There is no navigation above Lake Lanier to the north, nor any navigation from the lake in a southerly direction where the dam is located. The river is not navigable below the dam. There are, however, comparatively short stretches in the river above and below the dam which might be called navigable.

### CONCLUSIONS OF LAW.

1—Under the above stated facts this Court holds that the matter of limitation of liability of the owner of vessels for injuries inflicted on others is contained in Chapter 8 of the United States Code. Section 188 provides that that statute

"shall apply to all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters."

Section 183 provides that the liability of the owner for any damage caused

"without the privity or knowledge of such owner . . . shall not . . . exceed the amount of value of the interest of such owner in such vessel."

It has been pointed out that the purpose of the above statute (enacted in 1851) was to encourage investments in ship building by protecting the ship owner, thereby placing American maritime trade upon equal footing with the

---

1. Appendix 7, Report of the United States Study Commission on the Southeast River Basins (1963) at pages 2–13; Atlanta Freight Bureau, Statement and Appendices Supporting Canalization of the Chattahoochee River, etc. (1945), at page 2–73066. This finding is based, in large part, upon the existence of some nine power and flood control dams erected south of Lake Lanier upon the river without provision for flotation passage of boats navigating thereon. See map contained in Georgia Rivers, University of Georgia Press (19—), at page 68.

maritime competition (such as England) who enjoyed limited liability under their own flags. See Gilmore and Black, The Law of Admiralty (1957), § 10–2, page 663, et seq. Many cases have stated that the Act is to be liberally construed to effectuate its purpose (Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943), cited in 63 A.L.R.2d p. 365). The purpose was nevertheless, as stated above, to encourage investments in ship building by protecting the ship owner. Having been enacted in 1851 it could not have been the purpose of Congress thereby to protect the owners of pleasure boats used for pleasure and not commerce on the inland lakes of the country. Even at the time of its amendment in 1935 such a purpose does not seem to have been likely. In 1954 in Maryland Casualty Company v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806, Justice Black speaking for the four dissenting members of the court, observed:

> "Judicial expansion of the Limited Liability Act at this date seems especially inappropriate. *Many of the conditions in the shipping industry which induced the 1851 Congress to pass the Act no longer prevail.* And later Congresses, when they wished to aid shipping, provided subsidies paid out of the public treasury rather than subsidies paid by injured persons." At p. 437, 74 S.Ct. at p. 623 (Emphasis supplied)[2].

Many recent cases construing this statute have held it not to apply to inland lakes.

Judge Foley, writing the opinion In re Madsen's Petition, 187 F.Supp. 411 (N.D.N.Y.1960), concerning Lake Pleasant in the Adirondack Mountains, observed in part:

> "I am firmly convinced that the expansion of limited liability into the interior lakes of New York without natural ingress or egress to commerce is untenable under settled and clear judicial construction. Common sense is also involved and 'common sense often makes good law', Peak v. U. S., 353 U.S. 43, 46, 77 S.Ct. 613, 615, 1 L.Ed.2d 631."

In a similar vein Judge Willson in Shogry v. Lewis, 225 F.Supp. 741 (W.D.Pa.1964) pointed out:

> ". . . that the waters of Lake Chatauqua do not 'form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other states or foreign countries'."

Similar rulings were made in the case of Howser's Petition, 227 F.Supp. 81 (W.D.N.C.1964) involving Lake Hickory on the Catawba River, and in the case of Johnson y. Wurthman, 227 F.Supp. 135 (D.C.Ore.1964) involving Lake of the Woods, Winema National Forest. It is true there have been cases ruling or intimating a contrary view. In the case of Rautbord v. Ehmann, 190 F.2d 533 (7 Cir. 1951) the limitation contained in 46 U.S.C., § 183 was held applicable, but a

---

2. It is not necessary to rule whether, if it be assumed Congress had no such intention, changed conditions subsequent to the passage of said statutes would require a different ruling, a principle which has been applied under various conditions. Thus in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, the Court said:
   "We must consider public education in the light of its full development and its present place in American life throughout the Nation."
   The Court said:
   "We cannot turn the clock back to 1868."

Similarly, Gilmore and Black's The Law of Admiralty, 1957, § 10.4 observed on p. 667 that the above cited limitation statute
   "will be narrowly and not expansively construed in the future,"
as it passed in the era before the corporation had become usual and before the present forms of insurance protection were available. We might add it was also enacted before the present era of fast moving pleasure boats on our inland lakes.

careful reading of that decision will disclose that the

"Boat was maintained and operaged on a stretch of the Fox River between McHenry Dam in Illinois and Wilmot Dam in Wisconsin"

and the river was apparently navigable between those points. In all events it did not apply to an inland lake.

In a decision by the Fifth Circuit Court of Appeals in Schoremoyer v. Barnes, 190 F.2d 14, there was involved the question as to whether the Texas guest statute applied to motor boats operating upon the waterways and navigable lakes of the State of Texas. The Court assumed that the admiralty law applied, but its application was not discussed nor was any issue raised by the parties concerning the statute here under discussion. We do not find that the case just cited has been referred to in any other decision since it was rendered.

It is true that the nature of the vessel involved is not controlling and perhaps any type of vessel may come within the provisions of the statute in question. In the instant case, however, the controlling fact is that Lake Lanier is not a navigable lake, and therefore the case must be dismissed for want of jurisdiction.

A judgment will be rendered in accordance herewith.