HULL, Circuit Judge:
Defendant-Appellant Lago Canyon, Inc. (“Lago Canyon”) appeals the district court’s entry of a final judgment in favor of Plaintiff-Appellee St. Paul Fire & Marine Insurance Company (“St. Paul”). Lago Canyon owns a yacht that partially sank at a dock while undergoing engine repairs, causing over $1.2 million in damages. Lago Canyon filed a damage claim under its marine insurance policy (“the Marine Policy”) from St. Paul.
St. Paul filed a complaint for a declaratory judgment that the Marine Policy did not cover the damage because it was caused by a corroding part. Lago Canyon counterclaimed for breach of contract (i.e., the Marine Policy). After a three-day bench trial, the district court found that the “proximate cause of the damage was the failure of a hose barb which resulted from corrosion,” that the Marine Policy excluded corrosion, and that “the loss is not covered by the [Marine] Policy unless a provable manufacturer’s defect can be shown.” The district court also found that the manufacturer’s “use of yellow brass [for the hose barb] knowing its exposure to saltwater created a condition likely to cause corrosion” but that this defect was not covered by the term “manufacturer’s defect” in the Marine Policy.
Lago Canyon appeals, claiming the district court erred in: (1) applying admiralty law and striking Lago Canyon’s demand for a jury trial; (2) concluding that the Marine Policy did not cover the damage to the yacht; and (3) not awarding Lago Canyon prejudgment interest on the towing charges. After review and oral argument, we affirm in part and reverse in part.
I. THE MARINE POLICY AND PROCEDURAL HISTORY
Lago Canyon is the named insured under the “all risks” Marine Policy issued by St. Paul. The Marine Policy states that the Quay Marine Agreement, any endorsements or amendments thereto, and the declarations page constitute the coverage on the yacht. The Marine Policy has a property damage limit of $1.4 million, a property damage deductible of $7,500, and a personal property damage limit of $35,000.
The property damage coverage section of the Marine Policy provides that St. Paul “will pay for accidental direct physical loss of or damage to [the] yacht except as specifically stated or excluded in this policy.” The parties agree that “accidental” loss or damage to the yacht covers fortuitous loss unless subject to an exclusion. The coverage paragraph also states that if the loss is caused by a “provable manufacturer’s defect,” no deductible will apply.[1] *1184 The district court concluded that the Marine Policy indicates that a loss must be fortuitous to be covered and that a “manufacturer’s defect” is an example of a covered, fortuitous loss where no deductible applies.[2]
The Marine Policy, however, expressly excludes loss or damage “caused by or resulting from ... corrosion,” as follows:
Exclusions: We will not provide Property Damage Coverage for any loss or damage caused by or resulting from wear and tear, electrolysis, lack of maintenance, corrosion, deterioration, mold, or fiberglass blistering.
(Emphasis added). The commercial towing section of the Marine Policy covers reasonable costs, up to $7,500, to tow the yacht if it is “disabled from a cause other than a covered loss.”[3]
St. Paul issued a Reservation of Rights advising Lago that its loss might not be covered. St. Paul then filed a declaratory judgment action based on admiralty jurisdiction under 28 U.S.C. § 1333(1).[4] St. Paul’s complaint alleged, “[Tjhis action concerns a policy of marine insurance on a vessel, which is deemed a maritime contract, giving rise to admiralty and maritime jurisdiction.” It is well settled that cases involving marine contracts give rise to admiralty jurisdiction. See, e.g., Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23, 125 S.Ct. 385, 392-93, 160 L.Ed.2d 283 (2004). St. Paul’s complaint also invoked Rule 9(h) of the Federal Rules of Civil Procedure, which allows plaintiffs to elect admiralty jurisdiction over “some other ground” of federal jurisdiction.[5] In other words, if there are two grounds for jurisdiction in the same case — such as admiralty and diversity jurisdiction — Rule 9(h) provides that the plaintiff may elect to proceed in admiralty.
Lago Canyon counterclaimed that St. Paul had breached its contract (i.e., the *1185 Marine Policy) by refusing to pay the damages to the yacht and demanded prejudgment interest. Lago Canyon’s counterclaim is the flip side of St. Paul’s own claim. Lago Canyon asserts its loss is covered by the Marine Policy, and St. Paul asserts no coverage. Thus, both parties make claims under the same maritime insurance contract. Lago Canyon’s counterclaim also alleged that the action was between citizens of different states and the amount in controversy exceeded $75,000. Lago Canyon separately demanded a jury trial.
St. Paul then moved to strike Lago Canyon’s demand for a jury trial. Based on our precedent in Harrison v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968 (5th Cir.1978),[6] the district court granted St. Paul’s motion and struck Lago Canyon’s jury demand. The district court noted that “[t]he issue before the Court is whether St. Paul’s election to bring this case in admiralty precludes Lago [Canyon] from demanding a jury trial on its related state common law counterclaim.” The district court concluded that St. Paul’s Rule 9(h) designation of its marine insurance claim as an admiralty claim trumped Lago Canyon’s jury-trial right on its breach-of-contract counterclaim where Lago Canyon’s counterclaim arose out of the same operative facts and same Marine Policy as St. Paul’s claim. The district court recognized that there was a split of authority on this issue but concluded the binding precedent in Harrison required that both claims be tried by the court.[7]
After a three-day bench trial, the district court declared that St. Paul’s Marine Policy did not cover Lago Canyon’s damage and granted final judgment in favor of St. Paul. First, the district court found that: (1) the hose barb failed and caused the water intrusion, sinking, and damage; (2) there was “[c]lear and convincing evidence that the proximate cause of the loss was the failure of the hose barb which resulted from corrosion”; (3) “both experts determined that the hose barb failed because of corrosion, albeit they each found a different type of corrosive process was present”[8]; and (4) “[t]he use of yellow brass knowing its exposure to saltwater created a condition likely to cause corrosion.”
The district court acknowledged that the Marine Policy covered loss caused by a “manufacturer’s defect.” Because the Marine Policy explicitly excludes damage “caused by or resulting from corrosion,” the district court determined that “the loss is not covered by the [Marine] Policy unless a provable manufacturer’s defect can be shown.”
The district court treated the term “manufacturer’s defect” in the Marine Policy as meaning a “manufacturmp defect” and then distinguished between a “manu-facturm#” defect, a problem in the manufacturing process, and a design defect, a problem with the design of the product. The district court concluded that only manufacturing defects, not design defects, were covered by the Marine Policy. As to manufacturmp defects, the district court found that Lago Canyon “failed to submit any evidence to establish that the hose barb deviated from the manufacturer’s *1186 own design, standards or specifications, or establish that something went wrong during the manufacturing process.”
The district court ordered St. Paul to pay a $7,500 towing fee to Lago Canyon because the Marine Policy covered towing fees if the yacht was disabled from a cause other than a covered loss. Lago Canyon incurred a towing fee of $18,500.[9] The district court’s order did not mention prejudgment interest.
II. BENCH VS. JURY TRIAL
On appeal, Lago Canyon claims that the district court erred in striking its jury demand. We first review our Ham-son precedent, which the district court applied as controlling on the admiralty and jury trial issue.[10]

A. Our Harrison Precedent

In Harrison, the plaintiff was a longshoreman who came into contact with liquid chemical isobutyl acrylate (IBA) while cleaning up a spill on a ship. 577 F.2d at 972. The plaintiffs condition steadily deteriorated until he was left totally disabled. Id. The plaintiff sued the vessel’s owner, alleging negligence and unseaworthiness. Id. at 973. The plaintiff designated his claim as one “within the admiralty jurisdiction of this Honorable Court as that term is defined by Section 9(h).”[11] Id.
The defendant vessel-owner then im-pleaded the plaintiffs employer, alleging that any unseaworthiness of the vessel was due to the employer’s negligence. Id. The employer, in turn, filed a fourth-party complaint against the shipper of the IBA, seeking indemnification based upon products liability and negligent failure to warn of the dangerous propensities of IBA. Id. The defendant vessel-owner then asserted a claim against the shipper. Id. The plaintiff amended his complaint to state a claim against the fourth-party defendant shipper, alleging products liability and negligent failure to warn, and the plaintiff again specified in his pleading that the action was within the court’s admiralty jurisdiction under Rule 9(h). Id. After a bench trial, the trial court awarded a $246,695.66 judgment for the plaintiff solely against the fourth-party defendant, the shipper of the IBA. Id.
The fourth-party defendant shipper of the IBA appealed, arguing, inter alia, that it was deprived of its right to trial by jury. Id. The shipper emphasized that the actions against it were predicated on negli *1187 gence and products liability and, as such, fell within the diversity jurisdiction of the district court.[12] Id.
This Court concluded that the district court did not err in denying the shipper’s demand for a jury trial. Id. at 974. First, we explained the history of Rule 9(h) and how it preserves a non-jury trial when cases involve both admiralty and some other basis for jurisdiction, as follows:
The unification of the admiralty and civil rules in 1966 was intended to work no change in the general rule that admiralty claims are to be tried without a jury. Fed.R.Civ.P. 9(h) serves only as a device by which the pleader may claim the special benefits of admiralty procedures and remedies, including a non-jury trial, when the pleadings show that both admiralty and some other basis of federal jurisdiction exist.
Id. at 986 (quotation marks and citations omitted). We explained that, in such dual jurisdiction cases, the plaintiff may elect to proceed in admiralty under Rule 9(h), rather than under diversity jurisdiction, and thereby preclude a defendant from exercising his right to trial by jury.[13] Id. We noted that the Advisory Committee’s Notes to Rule 9(h) support this conclusion, and quoted those Notes as follows:
“Many claims, however, are cognizable by the district courts whether asserted in admiralty or in a civil action, assuming the existence of a nonmaritime ground of jurisdiction. Thus at present the pleader has (the) power to determine procedural consequences by the way in which he exercises the classic privilege given by the saving-to-suitors clause (28 U.S.C. § 1338) or by equivalent statutory provisions.... One of the important procedural consequences is that in the civil action either party may demand a jury trial, while in the suit in admiralty there is no right to jury trial except as provided by statute.... The unified rules must therefore provide some device for preserving the present power of the pleader to determine whether these historically maritime procedures shall be applicable to his claim or not; the pleader must be afforded some means of designating his claim as the counterpart of the present suit in admiralty, where its character as such is not clear.... Other methods of solving the problem were carefully explored, but the Advisory Committee concluded that the preferable solution is to allow the pleader who now has power to determine procedural consequences by filing a suit in admiralty to exercise that power under unification, for the limited instances in which procedural differences will remain, by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim.”
*1188 Id. at 986-87 (quoting Fed.R.Civ.P. 9(h), Advisory Committee Note, 39 F.R.D. 69, 75-76 (1966)).
This Court also noted that “the fourth-party complaint is based upon the same set of operative facts which gave rise to the first complaint.” Id. at 987. We added, “[t]hat is, the facts which established admiralty jurisdiction for the plaintiffs original claim, injury upon navigable waters performing a task traditionally performed by seamen, also formfed] the basis for the fourth-party action [by the plaintiff against the IBA shipper].” Id. We then determined that “the plaintiff has specifically elected to pursue a non-jury admiralty claim pursuant to Rule 9(h)” and that the trial court correctly denied the shipper’s demand for a jury trial. Id. at 988. We noted that the plaintiff, in amending his complaint to include a claim against the shipper, specified that he was bringing the claim under Rule 9(h). Id.

B. Lago Canyon’s Jury Demand

In this admiralty-Rule 9(h) case, the district court was, as we are, bound by Harrison and thus did not err in striking Lago Canyon’s demand for a jury trial. St. Paul’s declaratory judgment complaint as to its Marine Policy claimed the special benefits of admiralty procedures, including a non-jury trial, by setting forth why admiralty jurisdiction existed and by designating this action under Rule 9(h) as one brought within that admiralty jurisdiction.[14] Indeed, Rule 9(h) expressly authorizes St. Paul to elect to proceed in admiralty rather than “some other ground” of jurisdiction, such as diversity. Fed. R.Civ.P. 9(h). As explained by the Advisory Committee Notes to Rule 9(h) quoted in Harrison, this accords with the longstanding tradition in admiralty proceedings that the pleader has the right to determine procedural consequences (including the right to a jury trial) by a simple statement in his pleading that the claim is an admiralty claim. Fed.R.Civ.P. 9(h), Advisory Committee Note, 39 F.R.D. 69, 75-76 (1966).
Lago Canyon contends that Harrison should not apply because St. Paul brought a declaratory judgment action, whereas the plaintiff in Harrison brought a suit for damages. Lago Canyon argues that the Supreme Court’s decision in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), requires a different result from that reached in 1978 in Harrison. St. Paul counters that: (1) Beacon Theatres, while involving a suit for declaratory relief, was not an admiralty case, but an antitrust case under the Sherman Antitrust Act where the Seventh Amendment right to a jury trial controlled; (2) Rule 9(h) was not at issue; and (3) there is no Seventh Amendment right to a jury trial on maritime claims.
The problem for Lago Canyon is that Harrison in no way depended on the fact that the plaintiff filed a complaint for damages instead of a declaratory judgment against a defendant. Rather, Harrison addressed what happens when both admiralty and some other ground of federal jurisdiction exist in the same case and the plaintiff invokes admiralty jurisdiction under Rule 9(h). 577 F.2d at 986-88. This Court stated in Harrison that, in admiralty cases, “by electing to proceed under Rule 9(h), rather than by invoking diversity jurisdiction, the plaintiff may preclude the defendant from invoking the right to trial by jury which may otherwise exist.” Id. at 986. That is what happened here, which makes Harrison in point. Thus, our prior panel precedent rule requires us to follow Harrison.[15] See Saxton v. ACF *1189 Indus., Inc., 239 F.3d 1209, 1214 (11th Cir.2001) (“[U]nder this Circuit’s prior panel precedent rule, we are bound by the holding of the first panel of this Court to address an issue of law, unless and until that holding is overruled en banc or by the Supreme Court.”); Cohen v. Office Depot, Inc., 204 F.3d 1069, 1076 (11th Cir.2000) (“[T]he prior panel precedent rule is not dependent upon a subsequent panel’s appraisal of the initial decision’s correctness. Nor is the operation of the rule dependent upon the skill of the attorneys or wisdom of the judges involved with the prior decision — upon what was argued or considered.”).
Accordingly, under our prior panel precedent rule, we affirm the district court’s order striking Lago Canyon’s demand for a jury trial.[16]
III. MANUFACTURER’S DEFECT
On appeal, Lago Canyon asserts that the manufacturer’s choice of yellow brass for the hose barb was a manufacturer’s design defect which resulted in the corrosion and that the district court erred in concluding that the term “manufacturer’s defect” in the Marine Policy did not cover design defects. More specifically, Lago Canyon emphasizes that its trial evidence showed that: (1) the hose barb corroded because it was made of yellow brass; (2) yellow brass was a material unsuitable for a part exposed to salt water; and (3) the use of yellow brass constituted a design defect by the manufacturer.[17] In other words, Lago Canyon contends that the manufacturer’s design defect caused the hose barb failure and ultimate water intrusion.
*1190 At trial, St. Paul responded that: (1) yellow brass fittings in vessels, such as this hose barb, provide many years of service but must be properly maintained; (2) the corrosion process here took approximately seven years; (3) wear and tear is a natural part of the service life of a material; (4) Lago Canyon failed to maintain and inspect the hose barb; and (5) in any event, the manufacturer’s choice of yellow brass for its product is a design defect, not a manufacturing defect, and not covered by the Marine Policy.[18]
The district court found that: (1) Sun-seeker International Ltd. was the manufacturer of the yacht and “[t]he failed hose barb was an original part of the vessel installed by the manufacturer”; (2) the failed hose barb was made of yellow brass; and (3) “[t]he use of yellow brass knowing its exposure to saltwater created a condition likely to cause corrosion.” However, even if yellow brass was an improper material choice, the district court concluded that (1) the Marine Policy covered only “manufacturing defects” and (2) the use of yellow brass did not constitute a manufacturing defect covered by the Marine Policy. As noted earlier, the district court found that there was no evidence that something went wrong in the manufacturing process or that “the hose barb deviated from its intended design.”
On appeal, Lago Canyon acknowledges that a design defect is different from a defect in the manufacturing process. Lago Canyon, however, points out that a manufacturer may be liable for both design defects and defects in the manufacturing process. Lago Canyon argues that the term “manufacturer’s defect,” as used in the Marine Policy, means any defect attributable to the manufacturer and is not limited in any way. Lago Canyon thus claims that the term “manufacturer’s defect” includes both design and manufacturing defects. Lago Canyon argues that the district court’s order jumped from “manufacturer’s defect” to “manufacturmp defect” and erred in equating “manufacturer’s defect,” as used in the Marine Policy, with “manufacturing defect.”
 We agree with Lago Canyon that the district court erred in construing the term “manufacturer’s defect” in the Marine Policy. The Marine Policy does not define the term “manufacturer’s defect.” Although there is a distinct difference between a manufacturing defect and a design defect, manufacturers may be liable for both types of defects. See Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir.1999) (explaining that Florida has adopted the Restatement (Second) of Torts § 402(A), under which a manufacturer may be held liable for a design defect, a manufacturing defect, or an inadequate warning). Thus, both are manufacturer’s defects. St. Paul’s problem is that its Marine Policy uses the broad term “manufacturer’s defect” and not “manufacturing defect” as focused on by the district court. Attempting to give the term “manufacturer’s defect” its plain meaning and mindful *1191 of the settled rule that ambiguous provisions in an insurance policy are construed against the insurer, we conclude the term “manufacturer’s defect” includes defects attributable to the manufacturer whether in the manufacturer’s design or manufacturing of the product.[19] Thus, the district court erred in its legal interpretation of that term.[20]
Because the district court interpreted the Marine Policy not to cover a manufacturer’s design defect, the district court did not make findings as to other issues in the case. For example, although the district court found that “[t]he use of yellow brass knowing its exposure to saltwater created a condition likely to cause corrosion,” it did not determine whether the use of yellow brass rose to the level of a manufacturer’s design defect and, if so, what impact this had on the multiple causation issues in the case and the court’s other fact findings. While the district court found that “the proximate cause of the damage was the failure of a hose barb which resulted from corrosion” and corrosion was excluded, the district court also then found that “the loss is not covered by the [Marine] Policy unless a provable manufacturer’s defect can be shown.” Because it concluded that a design defect was not a “manufacturer’s defect,” the district court did not address further the interplay between the manufacturer’s defect coverage and the corrosion exclusion or what impact such a design defect had on its causation findings. Therefore, because our ruling triggers the need for the district court to address other issues in the first instance and because this is such a fact intensive case, we remand this case to the district court for further bench trial proceedings consistent with this Court’s ruling as to the “manufacturer’s defect” issue.[21]

B. Prejudgment Interest

Lastly, we turn to Lago Canyon’s contention that the district court erred in not awarding Lago Canyon prejudgment interest.[22] “As a general rule, pre-judgment interest should be awarded in admiralty cases. Pre-judgment interest *1192 is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his.” Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 942 (11th Cir.1990). A district court has discretion to deny prejudgment interest when there are “peculiar circumstances” that make it inequitable for the losing party to pay prejudgment interest. Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540, 1550 (11th Cir.1987). “[I]n any admiralty case in which the trial court refuses to award prejudgment interest, the best practice would be for it to detail the peculiar circumstance it has found, and specifically indicate that it is denying prejudgment interest as an exercise of the discretion created by the existence of peculiar circumstances. In the absence of clear findings by the district court, an appellate court could search the record for ‘peculiar circumstances’ and decide to award or deny prejudgment interest without a remand.” Id. at 1550-51.
Here, we not only have no clear finding of “peculiar circumstances,” but also no finding or mention at all of prejudgment interest. The district court’s order does not deny or grant prejudgment interest. It says nothing about it. Thus, we remand the issue of prejudgment interest to the district court to address in the first instance.
III. CONCLUSION
For the foregoing reasons, we affirm the district court’s rulings except as to the issue of the “manufacturer’s defect” and prejudgment interest on the towing charges. Because of the fact intensive nature of this case, we vacate the judgment in favor of St. Paul and remand the case to the district court for further bench trial proceedings as to the alleged “manufacturer’s defect” and prejudgment interest issues. We do not mean the district court must hear all the evidence again, but only that the parties should be able to supplement the record before the district court rules on the remaining issues.
AFFIRMED, IN PART; VACATED AND REMANDED, IN PART.

. The property damage coverage section of the Marine Policy provides:
Coverage Provided: We will pay for accidental direct physical loss or damage to your yacht except as specifically stated or excluded in the policy.... If the loss or damage is caused by a provable manufacturer’s defect, caused by fire not originating from your yacht, or results from a collision caused by another vessel, no deductible will apply.

. In its earlier summary judgment order, the district court concluded that "if there is a provable manufacturer’s defect then no deductible will apply thus giving rise to the inference that a provable manufacturer’s defect is covered by the policy.” In this appeal, St. Paul does not dispute that loss caused by a "manufacturer’s defect” is an example of a covered loss. However, as discussed later, the parties hotly dispute what is encompassed within the term "manufacturer’s defect” in the Marine Policy.

. The commercial towing section of the Marine Policy provides:
We will pay up to the amount of Commercial Towing / Emergency Services coverage shown on the Declarations Page for the following reasonable costs you incur if your yacht is disabled from a cause other than a covered loss:
1. towing to the nearest facility where proper repairs can be made.
2. emergency labor at the breakdown site.
3. the delivery of fuel, oil, battery or repair parts (excluding payment for the cost of these items).
4. tender trailer road service.

. 28 U.S.C. § 1333(1) provides:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

. Rule 9(h) currently provides:
(h) Admiralty or Maritime Claim.
(1) How Designated. If a claim for relief is within the admiralty or maritime jurisdiction and also within the courts' subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.
(2) Designation for Appeal. A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. § 1292(a)(3).
Fed.R.Civ.P. 9(h) (2006).

. This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) ten banc).

. See infra note 14 (detailing circuit split).

. The district court noted that St. Paul’s expert, David Wills, testified that the hose barb failed primarily due to galvanic corrosion, and a second type of corrosion, dezincification corrosion, also contributed. Lago Canyon’s expert, Frank Grate, testified that the hose barb failed due to dezincification, which is a subclassification of “parting” corrosion.

. Lago Canyon paid the entire $18,500 towing fee itself when St. Paul refused pay.

. The issue of whether the district court erred in striking Lago Canyon's jury claim presents a legal question, which we review de novo. Otero v. United States, 499 F.3d 1267, 1269 (11th Cir.2007).

. At the time oí Harrison, Rule 9(h) stated, in relevant part:
Admiralty and maritime claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. The reference in Title 28 U.S.C. § 1292(a)(3) to admiralty cases shall be construed to mean admiralty and maritime claims within the meaning of this subdivision (h).
Since Harrison, the form (but not the substance) of Rule 9(h) has been amended slightly. In any event, there is no question that St. Paul had the right to invoke the court’s admiralty jurisdiction as to the Marine Policy. The only question is whether this precluded Lago Canyon from invoking diversity jurisdiction and obtaining a jury trial.

. The shipper also argued it should be granted a jury trial because the fourth-party complaint cited Federal Rule of Civil Procedure 14(a) (the general indemnity provision) rather than Rule 14(c) (the admiralty indemnity provision) as the basis for the indemnity action against the shipper. Harrison, 577 F.2d at 973. This Court rejected this argument, refusing to permit a third-party defendant to emasculate the election given to the plaintiff by Rule 9(h) by exercising the simple expedient of bringing in a fourth-party defendant. Id. at 987.

. Under the savings-to-suitors clause, a plaintiff in a maritime case alleging an in personam claim has three options: (1) the plaintiff may hie suit in federal court under admiralty jurisdiction (which occurred in Harrison and here); (2) the plaintiff may file suit in federal court under diversity jurisdiction; or (3) the plaintiff may file suit in state court. See Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 360, 82 S.Ct. 780, 783-84, 7 L.Ed.2d 798 (1962); Madruga v. Superior Court of State of Cal. in and for San Diego County, 346 U.S. 556, 560-61, 74 S.Ct. 298, 300-01, 98 L.Ed. 290 (1954); In re Chimenti, 79 F.3d 534, 537 (6th Cir.1996).

. St. Paul's complaint did not allege diversity as an alternative basis of jurisdiction.

. Both parties acknowledge that courts are divided on the question of whether a plain *1189 tiffs Rule 9(h) admiralty designation prevents a defendant from obtaining a jury trial. Compare Harrison, 577 F.2d 968, and Windsor Mount Joy Mut. Ins. Co. v. Johnson, 264 F.Supp.2d 158, 162 (D.N.J.2003) (concluding that plaintiff's Rule 9(h) election to proceed in admiralty jurisdiction could not be "undone ... through the assertion of a counterclaim that might have been subject to the Court's jurisdiction under Section 1332 and a jury trial if brought in a separate action”), and Camrex (Holdings) Ltd. v. Camrex Reliance Paint Co., 90 F.R.D. 313, 317 (E.D.N.Y.1981) (concluding that a "plaintiff's election to sue on an admiralty or maritime claim as the basis for federal jurisdiction binds the parties in the lawsuit to the inevitable procedural consequence of a court trial, ... even where a 'legal' counterclaim has been interposed” (citation omitted)), with Wilmington Trust v. U.S. Dist. Court, 934 F.2d 1026, 1032 (9th Cir.1991) (concluding that the plaintiff’s "election to proceed in admiralty does not deprive the Union of a jury trial on the Union’s properly joined [counterjclaims”), and In re Lockheed Martin Corp., 503 F.3d 351, 358 (4th Cir.2007) (concluding that defendant-insured Lockheed was entitled to a jury trial on its ship-damage claim under the savings-to-suitors clause against plaintiff-insurer and stating that although plaintiff-insurer brought declaratory judgment action first and designated its claim as one in admiralty, Beacon Theatres requires courts to ignore plaintiff’s declaratory judgment action and look to how action would have proceeded otherwise), cert. denied, - U.S. -, 128 S.Ct. 2080, 170 L.Ed.2d 815 (2008).

. Lago Canyon also claims that St. Paul delayed service of its complaint in an attempt to manipulate the district court's decision to proceed without a jury. Lago Canyon asserts that it was mailed a copy of the complaint over two months after the suit was filed. However, there is no evidence to suggest that St. Paul engaged in any abusive tactics in filing its complaint before Lago Canyon filed its own. Lago Canyon was put on notice of a coverage dispute by St. Paul’s Reservation of Rights sent on April 6, 2006. Lago Canyon could have brought its own action at this time. St. Paul did not file its complaint until June 20, 2006.

. We review a district court's interpretation of a contract de novo. Ohio Cas. Ins. Co. v. Holcim (US), Inc., 548 F.3d 1352, 1356 (11th Cir.2008).

. Courts and the Restatement of Torts distinguish between design defects and manufacturing defects. See, e.g., Harduvel v. Gen. Dynamics Corp., 878 F.2d 1311, 1317 (11th Cir.1989) ("This distinction between ‘aberrational defects' and defects occurring throughout an entire line of products is frequently used in tort law to separate defects of manufacture from those of design.... Stated another way, the distinction is between an unintended configuration, and an intended configuration that may produce unintended and unwanted results.”); In re Temporomandibular Joint Implants Liab. Litig., 97 F.3d 1050, 1056 (8th Cir.1996) (concluding that a manufacturer’s use of "what proved to be an unsuitable material” for jaw implants is “clearly” a design defect for which the manufacturer should be liable); Restatement (Third) of Torts § 2 (1998) (setting forth different standards of liability for manufacturing and design defects).

. Under both Florida law and federal maritime law, an ambiguous provision in a maritime contract is interpreted against the drafter. See, e.g., Edward Leasing Corp., 785 F.2d at 889 (“The traditional rule of construction in admiralty cases is to construe the contract language most strongly against the drafter... .”); Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter.”). Because there is no conflict between state law and maritime law on this issue, we need not engage in the balancing test for determining which law applies when a conflict exists. See Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1488 (11th Cir.1986).

. The parties do not cite, nor can we find, any case addressing the meaning of the term “manufacturer's defect” in a marine insurance policy or any other insurance policy for that matter. Rather, Lago Canyon cites primarily Florida cases for the proposition that a manufacturer can be held liable for both manufacturing and design defects in the manufacturer’s product. St. Paul cites primarily Florida cases for the proposition that a defect in the manufacturing process or a so-called "manufacturing defect” is different from a manufacturer’s design defect. However, neither of those propositions address, much less resolve, the issue of what is meant by the undefined term “manufacturer's defect” in a marine insurance policy drafted by the insurer. We say this to explain the paucity of case law in our analysis.

. On appeal, Lago Canyon argues that, but for the design defect, the loss would not have occurred. We expressly do not reach any of the factual or legal causation issues on appeal as we need the district court to rule on the design defect issue first.

. We review a district court’s decision not to award prejudgment interest for abuse of discretion. See Ins. Co. of N. Am. v. M/V Ocean Lynx, 901 F.2d 934, 942 (11th Cir.1990).