**Janice MOORE, as Personal Representative, Plaintiff,**

v.

**TRAINA ENTERPRISES, INC., Defendant.**

**Civil Action No. 1:13–CV–1748–AT.**

United States District Court, N.D. Georgia, Atlanta Division.

Signed Dec. 13, 2013.

Charles Duke Ferguson, Joel Steven Magolnick, Veronica Mae Puntillo, Marko & Magolnick, P.A., Miami, FL, James Roland Hodes, Law Office of James R. Hodes, Atlanta, GA, for Plaintiff.

John P. Kavanagh, Burr & Forman, LLP, Mobile, AL, Erin Cornelius Howell, Kwende B. Jones, Burr & Forman, LLP, Atlanta, GA, for Defendant.

## ORDER

AMY TOTENBERG, District Judge.

Before the Court is Defendant Traina Enterprises, Inc.'s, Motion for Leave to File a Counterclaim [Doc. 21]. This case is a wrongful death action; Plaintiff alleges that Defendant's negligence led to the death of Tommy Moore as he was disembarking from a rental boat. (Compl., Doc. 1 ¶¶ 8, 22, 29.) Defendant seeks to amend

its Answer to include a counterclaim under admiralty law that would limit its liability in this case. (Def. Memo. in Supp., Doc. 21–1 at 3–4.)

The relevant provision of admiralty law is the Limitation of Liability Act ("LLA"). 46 U.S.C. § 30501 *et seq.* The LLA allows the owner of a vessel involved in a maritime accident to limit its liability to the owner's interest in the vessel and its pending freight.[1] Under the LLA, a shipowner may file a complaint in district court to initiate limitation proceedings. Fed. R.Civ.P. Admiralty Supp. R. F(1). In its complaint, a shipowner may seek both "exoneration from as well as limitation of liability." *Id.* at (2). Once limitation proceedings have begun, the district court "shall" enjoin all related claims against the shipowner until the court rules on the limitation issue. *Id.* at (3). Limitation proceedings, as claims for relief heard under admiralty jurisdiction, are tried before a judge. Fed.R.Civ.P. 9(h); 38(e); *see also St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.,* 561 F.3d 1181, 1188–89 (11th Cir.2009).

## I. Discussion

Plaintiff attacks Defendant's proposed counterclaim as futile. Plaintiff argues that the Complaint does not support admiralty jurisdiction in tort. (Pl's Response, Doc. 27 at 5.) Because the LLA cannot be invoked in the absence of admiralty jurisdiction, Plaintiff asks the Court to deny Defendant's motion to file the counterclaim.

 The determination of whether to grant a proposed amendment to an answer uses the same Rule 15(a) analysis as a motion to amend a complaint. *See Saewitz*

---

1. The accident or loss must also occur without the "privity or knowledge" of the shipowner. 46 U.S.C. § 30505(b).

*v. Lexington Ins. Co.,* 133 Fed.Appx. 695, 699 (11th Cir.2005) (citing *Carruthers v. BSA Advertising, Inc.,* 357 F.3d 1213, 1218 (11th Cir.2004)). "Rule 15(a) instructs that leave of the court to amend pleadings shall be freely given when justice so requires." *Carruthers,* 357 F.3d at 1218. However, if an amendment would be immediately subject to dismissal, a court may deny the amendment as futile. *See Cockrell v. Sparks,* 510 F.3d 1307, 1310 (11th Cir.2007).

The Court examines whether this case implicates admiralty jurisdiction. Admiralty claims fall within the exclusive jurisdiction of federal courts. 28 U.S.C. § 1333. However, Congress has not enacted a statute that provides general rules for determining admiralty jurisdiction. Defining the scope of maritime jurisdiction is a task that has been left largely to the courts.

 The Supreme Court has articulated a two-pronged test for the invocation of admiralty jurisdiction in tort. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Under this test courts must examine where a tort occurred and its connection with maritime activity; these are referred to as the maritime locus and maritime nexus prongs. *Id.* The maritime locus prong looks at "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* (citing the Extension of Admiralty Jurisdiction Act, 46 U.S.C. § 30101).[2]

 The maritime nexus prong has two elements. To satisfy this test, "the general character of the activity giving rise to the incident [must show] a substantial relationship to traditional maritime activity," and the incident must have "a potentially disruptive impact on maritime commerce." *Id.* (citation omitted). Courts analyze an incident's potential effect on maritime commerce at an "intermediate level of possible generality." *Id.* at 538, 115 S.Ct. 1043. This level of generality is a compromise between a narrow analysis of the particular facts of a case, and an overly broad level of generalization which would eliminate any distinction between cases. *Id.* at 539, 115 S.Ct. 1043.

The Court's admiralty jurisdiction inquiry begins with the maritime locus of the alleged tort. Both parties agree that the claims are based on a boating accident at Lake Allatoona in northwest Georgia. (Doc. 1 ¶ 7; Doc. 21–1 at 9.) On October 15, 2011, Tommy Moore and members of his family rented a boat at the lake. (Doc. 1 ¶ 8.) Mr. Moore was fastened to a motorized wheelchair and was assisted on board the rental boat by Defendant's employees. (Doc. 1 ¶¶ 10–11.) Later, as he attempted to disembark, the boat began to drift away from the dock. (Doc. 1 ¶¶ 15–17.) The boat continued drifting, and Mr. Moore fell with his wheelchair into the growing space between the boat and the dock. (Doc. 1 ¶¶ 19–22.) Mr. Moore drowned despite his family's efforts to save him. (Doc. 1 ¶ 22–23; Doc 21–1 at 10.)

Plaintiff argues that her particular allegations fail to implicate the maritime locus of admiralty. (Doc. 27 at 6–7.) Plaintiff believes her allegations of negligence are based on: 1) the negligent operation and maintenance of the premises, namely the

---

**2.** This Act extended admiralty tort jurisdiction to "all cases where the injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land." *Grubart,* 513 U.S. at 532, 115 S.Ct. 1043. Congress enacted this in 1948 to address the confusing jurisdictional distinction between whether an injury occurred on land or on navigable water. *Id.*

dock; 2) negligent training and supervision of employees; and 3) the failure to warn of dangerous conditions. (*Id.*) Plaintiff contends that these allegations are directed toward Defendant's land-based conduct, and that the boat was merely "peripherally involved" in the accident. (*Id.* at 6–8.) Plaintiff argues that the underlying negligence occurred on land; therefore admiralty jurisdiction does not exist.

In turn, Defendant points out that admiralty jurisdiction has been held to exist where parties are injured while disembarking from a boat. (Doc. 29 at 4.) Defendant cites to a Supreme Court case that found admiralty jurisdiction over a plaintiff who fell from the gangplank while disembarking, ultimately falling onto the dock. *The Admiral Peoples,* 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935).[3] Defendant argues that if the maritime locus is present where a disembarking party falls onto the dock, the maritime locus is undeniable here because Mr. Moore allegedly fell into the water and drowned. (Doc. 29 at 5.) While emphasizing the centrality of the rental boat to Plaintiff's claims, Defendant reminds the Court that the "decedent allegedly **fell off of the boat.**" (Doc. 29 at 7 (emphasis in original).)

■■■ However, the maritime locus of this accident is not as self-evident as Defendant claims. Neither party addresses a critical question: on what basis does Lake Allatoona qualify as "navigable waters"? Admiralty jurisdiction, required for invocation of the LLA, extends only to navigable waters. *See Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *LeBlanc v. Cleveland,* 198 F.3d 353, 359 (2d Cir.1999); *Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts,* 921 F.2d 775, 780 (8th Cir. 1990). "A waterway is navigable provided that it is used or susceptible of being used as an artery of commerce." *Adams v. Montana Power Co.,* 528 F.2d 437, 439 (1975) (citing *The Daniel Ball,* 77 U.S. 557, 10 Wall. 557, 19 L.Ed. 999 (1870)). Commerce, under admiralty jurisdiction, is defined as activities related to the business of interstate or international shipping. *The Daniel Ball,* 77 U.S. at 563, 77 U.S. 557. An inland body of water need not traverse state lines nor reach the ocean itself to qualify as navigable; serving as a link in the chain of maritime commerce is sufficient. *Id.* Admiralty makes no distinction between natural and man-made bodies of water; navigable waters are simply those that are "navigable in fact, or readily susceptible or being rendered so." *Rapanos v. United States,* 547 U.S. 715, 723, 126 S.Ct. 2208, 165 L.Ed.2d 159 (2006).

■■■ Defendant's proposed counterclaim fails to even allege that the accident occurred on navigable water. Only in its briefings does Defendant assert—on a conclusory basis—that the alleged tort occurred on navigable waters. Nowhere does Defendant address whether Lake Allatoona can support maritime commerce and thus qualify as navigable waters. An LLA claim for relief "shall set forth the facts on the basis of which the right to limit liability is asserted[.]" Fed.R.Civ.P. Admiralty Supp. R. F(2). Naturally, this pleading requirement extends to the factual basis for admiralty jurisdiction. Yet the proposed counterclaim merely alleges "[o]n October 15, 2011, the Vessel was located in Allatoona Lake, at the Park Marina." (Doc. 21–1 at 9.) Defendant's counterclaim and briefings offer the Court no further insight into how a tort occurring on Lake Allatoona would fall within admiralty jurisdiction.

---

**3.** More recent cases continue to recognize that disembarking from a vessel satisfies the maritime nexus prong. *See White v. United States,* 53 F.3d 43, 47 (4th Cir.1995).

 Lake Allatoona is a man-made reservoir located in Georgia.[4] The Allatoona Dam is situated on the Etowah River. The dam was completed in 1949; Lake Allatona was formed as water accumulated from the Etowah River. *Appendix A* at 3–2. The Allatoona Dam is a significant source of hydroelectric power and contains no system of locks to connect the lake to the Etowah River or any other body of water viable for maritime commerce. *Id.* at 2–1–2–6; 7–11. Both the dam and the lake are managed by the U.S. Army Corps of Engineers ("USACE"). *Id.* at 1–2. While "navigation" is one of seven federally-authorized project purposes for the Allatoona Dam and Lake, the USACE does not conduct specific operations directed towards navigation. *Id.* at 3–2. In fact, Lake Allatoona's contribution to maritime commerce appears limited to releasing water from Allatoona Dam and thereby aiding the navigability of downstream waters. *Id.* While the lake has strong commercial value as a recreation area, the intrastate nature of this activity is irrelevant to admiralty jurisdiction.

Considering this information, the Court finds it highly unlikely that Lake Allatoona would qualify as "navigable waters" under admiralty law. The Court's concern about navigability is bolstered by an earlier judicial decision in the Northern District of Georgia holding that admiralty jurisdiction did not extend to a similar body of water. *In re Stephens,* 341 F.Supp. 1404, 1405 (N.D.Ga.1965). In *Stephens,* the court determined that Lake Lanier—also a man-made reservoir located fewer than 50 miles from Lake Allatoona—was not a navigable body of water. The court found that Lake Lanier was, for the purpose of navigability, a landlocked lake located "entirely within the geographical boundaries of the Northern District of Georgia" unable to support maritime commerce. *Id.* The Court realizes that this case refers to the conditions of a different lake nearly 50 years ago. But since another court in this District has already established admiralty jurisdiction did not reach a nearby lake with similar physical characteristics, the Court finds it unwise to authorize limitation proceedings here without resolving whether the same issue applies to Lake Allatoona.

Defendant seems to assert that its counterclaim establishes admiralty jurisdiction by virtue of the allegation that Tommy Moore "fell off of the boat" and into a lake. However, Defendant's proposed counterclaim does not provide a sensible factual or legal basis upon which Lake Allatoona might qualify as "navigable waters." The Court therefore finds no basis for the application of admiralty jurisdiction, and Defendant's claim for relief under the LLA is thus futile. For these reasons, Defendant's Motion for Leave to File a Counterclaim [Doc. 21] is **DENIED.**

---

4. Facts that are "not subject to reasonable dispute" may be judicially noticed. Fed. R.Evid. 201(b). Such facts include those that "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* The Court takes judicial notice of facts regarding Lake Allatoona from the website of the U.S. Army Corps of Engineers. *See* Alabama–Coosa–Tallapoosa ("ACT") River Basin Water Control Manual, Appendix A (2013) ("Appendix A") at: http://www.sam.usace.army.mil/Portals/46/docs/planningenvironmental/act/docs/New/ACT%20Allatoona%20Dam%20and%20Lake%20WCMMarch%2013.pdf.