MURDOCK, Justice.
Parker Towing Company, Inc. (“Parker Towing”), appeals from a judgment of the Clarke Circuit Court denying Parker Towing’s cross-claim for indemnity from Triangle Aggregates, Inc. (“Triangle”). We affirm the judgment in part and reverse it in part.

I. Facts and Procedural History

Parker Towing owned a 40-acre parcel of property in Clarke County, which it mined for sand and gravel. Parker Towing’s property is adjacent to property owned by Betty Jo Haynie, Wynona Belle G. Crosby, Mary Allison Haynie, Elizabeth Haynie Wainstein, and Joe Mills (collectively “the landowners”). In 1996, 1998, and 2002, Parker Towing entered into a series of lease agreements whereby it leased various parcels of real property from the landowners (“the leased properties”).[1] The purpose of the leases, each of which by its terms was for a period of two years, was to enable Parker Towing to mine sand and gravel from the leased properties.
After each lease expired, Parker Towing continued mining on the property covered by the respective leases with the knowledge, permission, and consent of the landowners. Parker Towing also continued to make payment to the landowners as otherwise would have been required under the relevant leases. According to Parker Towing, it is a common practice that sand and gravel leases continue after their stated termination date with the permission and consent of the property owners, but without extending the leases in writing. Each of the lease agreements provided that Parker Towing would perform reclamation of the property covered thereby upon the expiration of the lease, with such reclamation to include the planting of pine seedlings within one year after Parker Towing had ceased its mining operations on each parcel.
In May 2005, Parker Towing entered into an agreement to sell its 40-acre parcel of property and its machinery and equipment and related assets to Triangle. Te-rah Huckabee, who was a vice president of Parker Towing, and Benny Chinnis, who was a vice president of Triangle, negotiated the sales agreement between Parker Towing and Triangle. The agreement provided, in pertinent part, for the transfer of “any remaining interest” Parker Towing held in the landowners’ leases, and the agreement further provided:
“Buyer [Triangle] agrees to perform any requirements remaining open under said lease including but not limited to reclamation of all previously mined and un-reclaimed property. Buyer agrees to indemnify and hold Seller [Parker Towing] harmless from any claims, demands or actions made against Seller for performance of said requirements even if they are deemed non-transferable under the now expired lease.”
After the sale to Triangle, Parker Towing discharged all of its employees who had been assigned primarily to the mining operation on the leased properties. Triangle then hired all the discharged Parker Towing employees. Thereafter, Triangle continued to mine the leased properties, and it also continued certain reclamation work on the leased properties that had been initiated by Parker Towing. After the sale, Parker Towing conducted no further operations on the leased properties, and none of its employees or agents went to the properties except Huckabee, who went twice to conclude matters relating to the sale to Triangle.
*163 In addition to mining on the leased properties and on the land it had purchased from Parker Towing, Triangle apparently also mined certain property owned by the landowners that was not included in the lease agreements between the landowners and Parker Towing (“the nonleased property”).
In October 2006, the landowners sued Parker Towing, Triangle, Triangle Land, LLC (“Triangle Land”),[2] Chinnis, and fictitiously named defendants. Count one of the complaint was based upon obligations arising under the lease agreements and stated:
“[The landowners] ... entered into a lease agreement for defendants or some of them to remove sand and gravel from a portion of the above described real estate. As a part of the consideration, defendants agreed to put the real property back into substantially its original condition for growing timber. Defendants have failed and refused to do so and have breached the agreement.”
Counts two through eight of the landowners’ complaint asserted claims against Parker Towing, Triangle, Triangle Land, Chinnis, and fictitiously named defendants, jointly and severally, based upon various torts they allegedly committed on the non-leased property.[3] Count two alleged that the aforesaid defendants “trespassed” because they had
“intentionally, willfully and unlawfully entered and conducted a sand and gravel operation upon a portion of the real property described above, not included, in the lease agreement, with knowledge that they had no right to mine on said real property.”
(Emphasis added.) Count three alleged that the defendants had “negligently or wantonly entered upon real property belonging to the [landowners] on which defendants had no lease agreement” and that this property was damaged as a proximate result of such negligence and wantonness. Count four alleged that the defendants “unlawfully bulldozed the real property, cut and cleared trees, and unlawfully occupied the subject real property.” Count five alleged that the defendants had “intentionally, willfully and unlawfully taken a portion of [the landowners’] real property without [the landowners’] consent and against [the landowners’] will.” Count six alleged that the defendants had committed “outrageous conduct” as to the landowners’ legal rights. Count seven included a claim for damages for mental anguish based on the defendants’ trespass, and count eight alleged that the defendants “independently and through imputation, were wanton, willful and grossly negligent, the proximate result of which [the landowners] have suffered actual damages.”
Parker Towing filed a cross-claim against Triangle seeking indemnity for any losses it might incur as a result of any failure by Triangle to have reclaimed the leased properties as alleged in count one of the landowners’ complaint, including all *164 costs and expenses incurred by Parker Towing in defending against the landowners’ claims. Parker Towing also filed a motion for a summary judgment on its cross-claim against Triangle in which it asserted that Triangle was contractually obligated to indemnify Parker Towing against any losses, including attorney fees and expenses, Parker Towing might incur as a result of any failure by Triangle to have performed the reclamation of the leased properties in a timely manner.
As to the nonleased property and counts two through eight of the complaint, Parker Towing filed a motion for a partial summary judgment against the landowners. The landowners filed a response to that motion, arguing that
“it appears that Parker’s position is that it is not liable for any intentional or negligent acts on the part of Triangle with respect to Triangle’s activities on [the landowners’] land not included in the [the landowners’] lease with Parker. In its Motion, Parker contends that it is not liable for any actions on the part of Triangle after it sold its land to Triangle and Triangle began its activities on [the landowners’] land. Parker, however, overlooks the extent of its duties and responsibilities to [the landowners] upon the assignment of its lease to Triangle.
[[Image here]]
“In the instant case, Parker simply assigned its rights and duties to Triangle without any notice to [the landowners]. Parker’s employees became employees of Triangle, and the activities on [the landowners’] property continued. During this period, Triangle began to trespass on additional property owned by [the landowners] without the [the landowners’] consent. From [the landowners’] perspective, Triangle and Parker are one in the same — Triangle has the same employees as Parker and Triangle continued doing the same work as Parker. When Triangle trespassed onto land not included in the lease between Parker and [the landowners], Parker remained liable to [the landowners] along with Triangle.
[[Image here]]
“Parker ... remains liable to [the landowners] for the actions of Triangle, its assignee. It cannot escape liability for the torts of Triangle by hiding behind the assignment. Parker is, in essence, one and the same with Triangle with respect to any torts committed by Triangle against [the landowners], and is jointly and severally liable for Triangle’s torts.”
(Emphasis added.)
The trial court denied both of Parker Towing’s summary-judgment motions. Thereafter, Parker Towing amended its cross-claim against Triangle to add a claim for indemnity in the event Parker Towing were to be held hable for actions of Triangle with respect to the nonleased property.
Sometime after depositions were taken in June 2008, Triangle paid the landowners, collectively, between $50,000 and $100,000 for the sand and gravel it had mined and removed. Triangle had not paid the landowners anything before that time.
In September 2008, Parker Towing’s liability-insurance carrier, Employers Mutual Casualty Company (“EMC”), filed a motion to intervene in the landowners’ action “for the limited purpose of determining whether there is insurance coverage for the claims alleged by the [landowners] against [Parker Towing].” In October 2008, the trial court entered an order granting EMC’s motion to intervene.[4] *165 EMC had issued two reservation-of-rights letters to Parker Towing, one dated November 2, 2006, and one dated September 21, 2007. The two letters contained similar language as to EMC’s proffering an attorney to defend Parker Towing against the landowners’ claims and as to EMC’s reservation of the right to deny coverage for liability as to the landowners’ claims.[5] EMC’s September 21, 2007, reservation-of-rights letter to Parker Towing states that, although EMC was providing Parker Towing an attorney who would defend Parker Towing’s interests, EMC “reserve[d] the right to withdraw this defense at any time” and
“[bjecause of the coverage issues presented and those that may arise within the course of this litigation, [Parker Towing] may wish to consult with a personal attorney to advise [it]. However, EMC will be unable to pay the attorney fees of any personal attorney [Parker Towing] may select to represent [it].” Parker Towing hired Hamp Uzzelle, a
lawyer who had represented Parker Towing in the past, to defend it in the landowners’ action, reasoning that if EMC might not pay the claims against Parker Towing, Parker Towing should control the defense against those claims.
In April 2009, EMC entered into a settlement agreement with Parker Towing concerning the insurance-coverage dispute between them. Pursuant to the settlement agreement, EMC paid Parker Towing $25,000 in exchange for Parker Towing’s releasing EMC
“from any and all claims, demands, actions, causes of action, costs, expenses, attorney’s fees, judgments, settlements, sums of money, damages, and liabilities whatsoever, whether known or unknown, arising out of the State Court Civil Action (either those asserted or which could have been asserted in said State Court Civil Action).”
In conjunction with the settlement agreement between Parker Towing and EMC, the landowners also settled their claims against Parker Towing, Triangle, Triangle Land, and Chinnis. Triangle paid the landowners $75,000, and Parker Towing paid the landowners $25,000 (the same amount it had received from its settlement with EMC). The settlement agreement between the landowners and the various defendants specifically excluded any settlement of Parker Towing’s cross-claim against Triangle.
On May 28, 2009, the landowners, Parker Towing, Triangle, Triangle Land, and Chinnis filed a “Joint Stipulation of Dismissal With Prejudice” as to the landowners’ claims. The joint stipulation provided that “the Cross-Claim pending between *166 Parker Towing Company, Inc., and Triangle ... is still active and due to remain as an active claim pending in this matter.” Thereafter, the trial court entered an order dismissing the landowners’ claims with prejudice. Before the dismissal of the landowners’ claims, the role played by the attorney retained by EMC to defend Parker Towing was limited; following the dismissal of the landowners’ claims, the role of the attorney retained by EMC ended altogether.
Parker Towing’s cross-claim against Triangle proceeded to a bench trial in October 2010. At trial, Parker Towing sought indemnity both for the $25,000 it had paid the landowners in settlement of their claims against Parker Towing and for its attorney fees and expenses in defending against the landowners’ claims. According to Parker Towing, Uzzelle’s fee for defending the landowners’ claims against Parker Towing was $39,364.40, and court-reporter fees were $944.55. After receiving ore tenus evidence, the trial court entered a judgment in favor of Triangle and against Parker Towing as to all claims asserted by Parker Towing -in its cross-claim. Parker Towing appeals from the trial court’s final judgment.

II. Standard of Review

“ ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’ Smith v. Muehia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)); see also First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987). As this Court has stated,
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Bom v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
Robinson v. Evans, 959 So.2d 634, 637 (Ala.2006).

III. Analysis

Parker Towing contends that Triangle must indemnify it for the $25,000 it paid in settlement of the landowners’ claims against it and for the attorney fees and litigation expenses it incurred to defend itself against the landowners’ claims. We first address Parker Towing’s arguments regarding its claim for indemnification for the $25,000 paid to the landowners.

*167
A. $25,000 Paid to the Landowners

Parker Towing first makes an argument for indemnification as to the $25,000 based on the tort claims against it in counts two through eight of the complaint relating to the nonleased property. It contends that the landowners’ theory was that, although Parker Towing itself did not engage directly in the allegedly tortious conduct, it was “vicariously” responsible for the tortious conduct of Triangle on the nonleased property. Parker Towing argues that the threat of being held vicariously liable for the actions of Triangle resulted in its payment of at least part of the $25,000 it paid the landowners in settlement of the claims against it and that, therefore, it should be entitled to indemnification by Triangle.
The trial court rejected this assertion, explaining:
“Reviewing the allegations asserted by the [landowners] against both Triangle and Parker, and considering the evidence produced by Parker at trial, it is the opinion of the Court that the claims asserted by the [landowners] against Parker were not based upon its alleged vicarious liability for the acts of Triangle. There is no allegation asserted by the [landowners] in their complaint against Parker or Triangle that Parker is vicariously liable for the acts of Triangle, nor that any agency relationship existed between Parker and Triangle for the alleged wrongful acts asserted by the [landowners]. It would appear the claims asserted by the [landoimers] against Parker and Triangle allege they were joint tort-feasors in connection with the claimed wrongful acts and should be held jointly and severally liable for damages arising out of said wrongful acts. Therefore, it does not appear to the Court that Parker has met its burden of proving to the reasonable satisfaction of the Court its claim that Triangle should indemnify it for damages incurred in connection with its defense of the [landowners] claims based upon a common law indemnity theory.”
We agree with the trial court that the tort claims against Parker Towing and Triangle in counts two through eight of the complaint with respect to the nonleased property are in the nature of allegations against joint tortfeasors. We also agree with the trial court that there is no theory of indemnity that may be applied in this case as between such joint tortfeasors.[6]
The general rule in Alabama is that, in the absence of a statutory or contractual basis otherwise, there is no contribution or indemnity among joint tortfeasors. Ex parte Stenum Hosp., 81 So.3d 314, 318 (Ala.2011); Parker v. Mauldin, 353 So.2d 1375 (Ala.1977). In their response in the trial court to Parker Towing’s motion for a summary judgment as to counts two through eight, the landowners attempted to circumvent this general rule by arguing that Triangle was using the former employees of Parker Towing in its allegedly tortious conduct and that Parker Towing and Triangle were “one and the same.” As noted, Triangle also attempts to frame Parker Towing’s alleged liability to the landowners as having been “vicarious” in nature. For all that appears from the record, however, Triangle is an entirely separate corporation that purchased the *168 assets of Parker Towing and subsequently hired its employees. We see no basis in the law for treating these two separate legal entities as a single entity for purposes of the tort allegations in the complaint. Likewise, we see no relationship between the two legal entities that could provide a basis for vicarious liability. Thus, any payment made by Parker Towing to the landowners based on either such argument could be seen only as “voluntary.” See discussion of the “voluntary payment doctrine,” infra.[7]
The trial court also rejected Parker Towing’s claim for indemnification from Triangle for any portion of the $25,000 insofar as it related to the claims asserted by the landowners against Parker Towing in count one of the complaint relating to the reclamation of the leased properties. Parker Towing contends that Triangle was responsible for a breach of the reclamation obligation under the lease agreements assigned by Parker Towing to Triangle and that, at least to some extent, it made the $25,000 payment to the landowners to compensate for that breach. In rejecting this argument, the trial court noted that there was testimony to the effect that reclamation of the property had been completed by the time Parker Towing agreed to pay $25,000 in settlement of the landowners’ claims, i.e., some two and one-half years after the commencement of the lawsuit. The trial court cited the testimony of Benny Chinnis, a vice president of Triangle, to the effect that all reclamation of the leased properties had been completed at the time of the settlement and that there was no claim being pursued by the landowners against anyone for reclamation of the leased properties at that juncture.[8] The trial court also relied upon the testimony of Terah Huckabee, a vice president of Parker Towing, whom the trial court understood as testifying that, at the time of settlement, there were no claims being pursued against Parker Towing in connection with the reclamation. The trial court concluded that, “therefore, the terms of any written indemnity agreement between Parker and Triangle had been satisfied and would not form the legal basis for recovery by Parker on its Cross-Claim against Triangle.”
Parker Towing contests these findings by the trial court, arguing, among other things, that Huckabee subsequently testified in a manner that appeared to contradict certain portions of his testimony relied upon by the trial court. Under the ore tenus rule, however, the deference owed the trial court’s factual findings, including the weight and credibility the trial court gives to certain testimony, prevents us from second-guessing the trial court’s factual findings in this regard. Accordingly, we find no basis on which to disturb the trial court’s conclusion that, at the time of the settlement of the underlying action, *169 the landowners’ original claim for the cost of reclamation of the leased properties no longer provided a basis for the payment by Parker Towing of the $25,000. See generally Mount Airy Ins. Co. v. Doe Law Firm, 668 So.2d 584 (Ala.1995) (rejecting claim for indemnification on the ground that the party seeking the indemnification had voluntarily made the payments in question to another party to settle an underlying lawsuit). Parker Towing therefore was not entitled to indemnification of some of or all the $25,000 payment it made to the landowners pursuant to the written indemnity agreement between it and Triangle.

B. Attorney Fees and Litigation Expenses

We turn now to the issue of the recovery of the attorney fees and litigation expenses Parker Towing paid in the course of defending itself against the landowners’ claims. Parker Towing claims the right to be indemnified for its attorney fees and expenses under both the common law and its indemnification agreement with Triangle.[9] Consistent with our conclusion in Part A above, we find no merit in the common-law indemnity claims asserted by Parker Towing. As discussed above, the landowners’ claims as to the nonleased property were in the nature of claims against Parker Towing and Triangle as joint tortfeasors. As discussed, there is no viable basis under Alabama law presented here for indemnification of any of or all the $25,000 payment made by Parker Towing to the landowners to the extent Parker Towing contends it was made in response to the claims by the landowners as to the nonleased property. A fortiori, there is no basis under Alabama law for a common-law indemnification for attorney fees as between joint tortfeasors in circumstances such as those presented here. See generally Jones v. Regions Bank, 25 So.3d 427, 441 (Ala.2009) (noting that “[i]t is well settled that ‘ “Alabama follows the ‘American rule,’ whereby attorney fees may be recovered if they are provided for by statute or by contract or if they are called for by special equity, such as in proceedings where the attorney’s efforts create a ‘common fund’ out of which fees may be paid”’” (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1078 (Ala.2006), quoting in turn Battle v. City of Birmingham, 656 So.2d 344, 347 (Ala.1995))); Mitchell v. Huntsville Hosp., 598 So.2d 1358,1360 (Ala.1992) (to same effect).
In contrast to our conclusion as to Parker Towing’s common-law indemnification claim, we conclude that Parker Towing is in fact entitled to reimbursement by Triangle of at least a portion of its attorney fees and litigation expenses under its contractual indemnification agreement with Triangle.
As discussed in Part A above, the trial court concluded that, by the time the settlement agreement was entered into by the parties and Parker Towing agreed to pay the landowners $25,000, the landowners’ allegations regarding reclamation of the nonleased property no longer provided a basis for liability, i.e., for any payment of any portion of the $25,000. This does not mean, however, that Triangle was not in breach of its reclamation obligation at the outset of the litigation, some two and one-half years before the settlement. To the contrary, both parties and the trial court appear to accept as a given that reclama *170 tion had not been timely performed at that juncture and that there had been a breach of the reclamation obligation. Nor does it mean the landowners had not asserted a claim regarding the reclamation of the leased properties as to which Parker Towing needed to defend itself.[10]
Nonetheless, the trial court rejected Parker Towing’s claim, reasoning that Parker Towing voluntarily chose “to assume the expense of litigation, even though EMC provided Attorney Patterson’s services to act as primary defense counsel at the expense of EMC.” With this as its predicate, the trial court invoked the “voluntary-payment doctrine,” see Mount Airy Ins. Co. v. Doe Law Firm, supra, to conclude that Parker Towing was not entitled to indemnity of its attorney fees even to the extent the fees were incurred in defending against count one of the complaint.
The voluntary-payment doctrine has no application in this context. The landowners sued Parker Towing, and Parker Towing had little choice but to engage in that litigation and to use counsel to defend itself against what was at the time a meritorious reclamation claim. Parker Towing, as it had every right to do, chose Uzzelle to represent it rather than relying on an attorney provided by its third-party insurer, EMC. That choice is not germane to the indemnity obligation between Triangle and Parker Towing. Triangle is a stranger to the EMC-Parker Towing insurance arrangement.[11]
As a corollary, the trial court’s invocation of the voluntary-payment doctrine in this circumstance conflicts with the collateral-source rule. As this Court stated in Jones v. Crawford, 361 So.2d 518, 522 (Ala.1978):
“The courts of this state have held many times that what has occurred between insuror and insured is of no concern to the defendant — that the sum received from insurance cannot be shown in mitigation of damages for the injury.”
See also Sturdivant v. Crawford, 240 Ala. 383, 385, 199 So. 537, 538 (1940) (“The amount paid by the insurance company does not even affect the measure of recovery. The insurance of the property is a mere indemnity, and insurer and insured are regarded as one person. The mere fact that the insurer had paid the insured cannot affect the action against the wrongdoer who has destroyed or injured the property, the subject of the insurance.”).[12]
Finally, although no question has been raised as to whether the amount of the *171 attorney fees charged by Uzzelle were reasonable for the work he performed, Triangle does raise a question as to what portion of the attorney fees and other litigation expenses incurred by Parker Towing were attributable to its defense of the reclamation claim as to the leased properties. The entirety of Triangle’s argument in this regard reads as follows: “Parker had to defend the lawsuit as to Counts Two through Eight and has not put forth evidence it was incurring expenses specific to the reclamation claim — the only claim for which the sales agreement provided the potential for indemnification.”
Aside from the brevity of this “argument” and the lack of citation of any authority in connection therewith, we note that this argument was not asserted by Triangle in the trial court. This argument is of such a nature that, because it was not asserted in the trial court, it provides no alternative legal ground for the affirmance of the trial court’s judgment in this appeal. Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found,., P.C., 881 So.2d 1013, 1020 (Ala.2003) (“[T]his Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988). This rule fails in application only ivhere due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance.... ” (emphasis added).)
Nonetheless, we conclude today that Parker Towing is entitled to indemnification by Triangle of its attorney fees and other litigation expenses to the extent incurred by Parker Towing to defend against the claims asserted against it under the reclamation provision of the lease agreements, but not to the extent incurred by Parker Towing to defend against the various tort claims asserted against Parker Towing and Triangle as joint tortfeasors. Accordingly, we reverse the judgment of the trial court to the contrary and remand this case for a determination as to what portion of the attorney fees and expenses incurred by Parker Towing would have been incurred by it even in the absence of the tort claims raised by the landowners. The trial court is instructed to enter a judgment in that amount in favor of Parker Towing.

IV. Conclusion

We affirm the trial court’s judgment to the extent that it concludes that Parker Towing is not entitled to indemnity for the $25,000 it paid the landowners in settlement of the claims against it. We reverse the trial court’s judgment with respect to its conclusion that Triangle is not required to indemnify Parker Towing for its attorney fees and other litigation expenses incurred to defend against the claims asserted against Parker Towing for breaches of the reclamation provisions in the lease agreements with the landowners. The fees and expenses incurred by Parker Towing as a result of those breaches are covered by the indemnification agreement between Parker Towing and Triangle. We remand the case for further proceedings and the entry of judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
MOORE, C.J., and SHAW and BRYAN, JJ., concur in the result.

. The lease agreements were executed in the name of Waterway Materials ("Waterway”); however, Waterway was, at all relevant times, an unincorporated division of Parker Towing.

. The complaint initially named Triangle Land as Triangle Land, Inc., but the landowners amended the complaint to correct the misnomer. The complaint also named Waterway as a defendant under the mistaken impression that it was a separate legal entity. See supra note 1. In its answer to the complaint, Parker Towing explained that Waterway was merely a division of Parker Towing, a fact accepted by the landowners.

. The landowners' complaint also included a claim against two bonding companies, Travelers Casualty and Surety Company of America (''Travelers”) and Farmington Casualty Company ("Farmington”), which had allegedly issued reclamation bonds as to Triangle or Triangle Land or both entities. The landowners subsequently dismissed the claim against Travelers and Farmington.

. In September 2007, EMC had filed an action against Parker Towing and the landown *165 ers in the United States District Court for the Southern District of Alabama. In the federal action, EMC sought, in part, a determination "of all coverage issues as may exist under all the terms and provisions of the policy” it had issued to Parker Towing and whether EMC had "a duty to defend and/or indemnify” Parker Towing.

. According to EMC, there was some question as to whether Parker Towing knew of the landowners’ "loss” and failed to disclose it when Parker Towing renewed its insurance policy with EMC for the years 2006 and 2007. Additionally, Triangle’s liability-insurance carrier, Pennsylvania National Mutual Casualty Insurance Company (“Pennsylvania National”), intervened in the landowners’ action for the "limited purpose” of determining its insurance-policy-coverage obligations to Triangle and Parker Towing. Pennsylvania National alleged that Parker Towing claimed it was an additional insured under Triangle’s liability-insurance policy, that Pennsylvania National was providing a defense to Triangle and Parker Towing under a reservation of rights, and that Pennsylvania National disputed coverage as to certain of the claims against Triangle and Parker Towing.

. That is not to say that we see some factual basis in the record for concluding that Parker Towing was a joint tortfeasor with Triangle in relation to Triangle’s activities on the non-leased property; we do not. The point made in the text is merely that, even if the two were to be considered joint tortfeasors, there is no applicable legal theory of indemnity that might be applied in this case.

. No argument is presented in this case that Parker Towing should be entitled to indemnification under any other asserted exception to the general rule against contribution and indemnity among joint tortfeasors. Among other things, no argument is presented that Parker Towing should be entitled to indemnification from Triangle under an active-passive theory of indemnity. See generally SouthTrust Bank v. Jones, Morrison, Womack & Bearing, P.C., 939 So.2d 885, 902 (Ala.Civ. App.2005) (referring to "[t]he active-versus-passive-negligence analysis used in Mallory Steamship Co. v. Druhan, 17 Ala.App. 365, 84 So. 874 (1920), [as] a well-established exception to the rule that joint tortfeasors may not claim indemnity against each other”).

. In point of fact, Chinnis testified that the reclamation was all but completed in the spring of 2009, at the time of the settlement, with the only remaining step being the planting of pine trees, which all parties understood would have to wait until the fall because of weather conditions.

. Of course, as this Court has previously noted, ‘‘[t]hough [the plaintiff] pleaded different theories of indemnification recovery, i.e., contract and common law, by definition it may still receive only one recovery for indemnification.” North Alabama Elec. Coop. v. New Hope Tel. Coop., 7 So.3d 342, 345 (Ala.2008).

. As noted in Part I above, count one of the landowners’ complaint states, in part, as follows:
"[The landowners] ... entered into a lease agreement for defendants or some of them to remove sand and gravel from a portion of the above described real estate. As a part of the consideration, defendants agreed to put the real property back into substantially its original condition for growing timber. Defendants have failed and refused to do so and have breached the agreement.”

. Further, even if Parker Towing had used counsel paid by EMC, EMC presumably would have had a subrogation claim against Triangle for the costs incurred by it for that attorney’s services.

.It also should be noted that there is no contention in this case that the language of the indemnification provision in the sales agreement between Triangle and Parker Towing was not broad enough to cover attorney fees and other litigation expenses that might reasonably be incurred by Parker Towing in defending against claims resulting from a breach by Triangle of obligations it assumed under the sales agreement. See generally 41 Am.Jur.2d Indemnity § 30 (2005) (observing that ”[w]here a party is contractually entitled to be held harmless, that party is entitled to its costs and attorney’s fees incurred to enforce the contractual indemnity provision”).