Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

———————————————

### SC-2023-0882

———————————————

## JohnsonKreis Construction Company, Inc.

### v.

## Howard Painting, Inc.; Auto-Owners Insurance Company; and Owners Insurance Company

———————————————

### SC-2023-0914

———————————————

## Cincinnati Insurance Company

### v.

**Howard Painting, Inc.; Auto-Owners Insurance Company; and Owners Insurance Company**

**Appeals from Jefferson Circuit Court**
**(CV-20-900230)**

SHAW, Justice.

These consolidated appeals arise from a dispute over the responsibility of Howard Painting, Inc. ("Howard"), and its insurers, Auto-Owners Insurance Company and Owners Insurance Company, the defendants below, to reimburse JohnsonKreis Construction Company, Inc. ("JohnsonKreis"), and its insurer, Cincinnati Insurance Company ("CIC"), for amounts paid by JohnsonKreis and CIC to settle claims against JohnsonKreis in a wrongful-death case in which both JohnsonKreis and Howard were named defendants. In case number SC-2023-0882, JohnsonKreis appeals from a summary judgment entered by the Jefferson Circuit Court in favor of Howard, Auto-Owners Insurance Company, and Owners Insurance Company, in which the trial court determined that an indemnity provision in a contract between Howard and JohnsonKreis was legally unenforceable. In case number SC-2023-0914, CIC, both incorporating the arguments of JohnsonKreis in case no. SC-2023-0882 and raising its own separate challenges, appeals from the

same summary judgment. We reverse and remand.

Facts and Procedural History

In 2018, JohnsonKreis, a commercial-construction company, served as the general contractor on a hotel-construction project in Birmingham; Howard worked as a subcontractor on the construction project. The subcontract agreement between them provided, in pertinent part:

> "The Subcontractor [Howard] hereby covenants and agrees to defend, hold harmless, indemnify and exonerate the Contractor [JohnsonKreis], the Owner, and the Architect/Engineer (and their respective agents, employees, consultants or other representatives) as to and from all liability, claims, lawsuits, and demands (including all judgments and settlements made at arm's length and all reasonable attorney's fees and litigation expenses connected therewith) (hereinafter referred to as 'claims') for personal injury, death (including personal injury or death to the Subcontractor's own employee(s) … ) and/or property damage arising out of or relating to Subcontractor's (or that of Subcontractor's employees or lower-tier subcontractors) negligence or fault, the breach of or violation of a statute, ordinance, governmental regulation, standard, or rule, or the breach of contract, but only to the proportional extent of Subcontractor's responsibility for same. The Subcontractor's liability insurance policies shall each contain contractual insurance coverage which protects the Subcontractor, the Contractor, the Owner, and the Architect/Engineer (and their respective agents, employees, consultants or other representatives) as to the covenants contained in this Section."

3

(Emphasis added.)

> In a separate section, the subcontract agreement provided:
>
> "[JohnsonKreis] … shall be named as additional insured on the subcontractor's policies as to all coverages …. Additional insured coverage as required by this paragraph shall be primary without contribution from any other insurance or self-insurance program available to any additional insured."

The subcontract agreement further provided that Howard "accept[ed] complete responsibility for the health and safety of its employees and its subcontractors' employees."

Howard apparently obtained its commercial general-liability policy from Auto-Owners Insurance Company and/or its wholly owned subsidiary, Owners Insurance Company (collectively referred to as "Owners"). That policy included a "Blanket Additional Insured" endorsement ("the additional-insured endorsement"), which provided, in pertinent part:

> "A person or organization is an Additional Insured, only with respect to liability arising out of 'your work'[1] for that Additional Insured by or for you:
>
> "1. If required in a written contract or agreement; …

---

[1]"Your work" was defined in the additional-insured endorsement, in part, as follows: "Work or operations performed by you or on your behalf."

4

"....

"....

"This insurance is primary for the Additional insured, but only with respect to liability arising out of 'your work' for that Additional Insured by or for you. Other insurance available to the Additional Insured will apply as excess insurance and not contribute as primary insurance to the insurance provided by this endorsement."

(Emphasis added.)[2]  In addition, Howard had a commercial umbrella policy also issued by Owners.

At all pertinent times, JohnsonKreis was insured by a separate commercial general-liability policy and an umbrella policy issued to it by CIC.  Language in JohnsonKreis's CIC policies provided for the transfer to CIC of any right of recovery for payments made by CIC to others on behalf of JohnsonKreis under the policies.

During construction, Domingo Rosales-Herrera, an employee of CEC Drywall, LLC, a subcontractor providing "man power" to Howard at the project site, was killed when he fell from a window on one of the upper

---

[2]The parties' filings on appeal, as well as discovery below, suggest that it was undisputed that JohnsonKreis was an additional insured for work on the project site.  However, the parties disputed whether that coverage had been triggered and, if so, to what extent.

floors of the hotel that was being constructed. Specifically, Rosales-Herrera was, immediately preceding his death, attempting to load a heavy piece of painting equipment -- a texture-blowing machine -- owned by Howard from the window into a trash box situated on the forks of a "Lull" or "telehandler" -- essentially a forklift with an extended boom for lifting items at increased heights. Apparently, Rosales-Herrera did so to avoid having to carry the 150-pound piece of equipment back down the hotel stairs for cleaning.

The telehandler was owned by JohnsonKreis and was exclusively operated by its employees to raise and lower building materials at the project site. The trash box was not secured to the telehandler with a safety chain. In addition, the telehandler's forks were in a narrow configuration suitable for raising and lowering items the width of pallets but not items the width of the trash box. As a result, when, after removing an existing safety barrier installed on the window, Rosales-Herrera and another CEC Drywall employee attempted to lift the texture-blowing machine across the gap between the window and the telehandler in order to place it in the unsecured trash box, they stepped onto the edge of the box, causing it to tip and Rosales-Herrera to fall. The

6

injuries Rosales-Herrera sustained ultimately led to his death.

The personal representative of Rosales-Herrera's estate later commenced a wrongful-death action against both JohnsonKreis and Howard ("the Herrera litigation"). Upon receiving notification of the Herrera litigation, JohnsonKreis demanded, pursuant to the subcontract agreement, that Howard defend and indemnify it against the claims. Thereafter, Owners began, in or around July 2018, defending JohnsonKreis in the Herrera litigation under "reservation of rights letters," and it continued to do so for approximately one year.

In the initial reservation-of-rights letter to JohnsonKreis, Owners quoted applicable portions of Howard's policies with Owners and interpreted the subcontract agreement as requiring that Howard "defend and indemnify JohnsonKreis as to all liability … arising out of or relating to Howard's … negligence or fault."[3] Supplemental correspondence from

_____

[3]Specifically, Owners' initial response to JohnsonKreis's demand informed JohnsonKreis that Howard's policies with Owners "may not provide defense and/or indemnity coverage for some or all of the allegations found in [the Herrera litigation]." Apparently, Owners took the position that the facts suggested that the claims in the Herrera litigation -- and, in fact, Rosales-Herrera's death -- had resulted from JohnsonKreis's safety failures on the project site and that Howard was not obligated to indemnify JohnsonKreis for JohnsonKreis's own acts but,

Owners to JohnsonKreis in August 2019, which was allegedly precipitated by additional information disclosed during pretrial discovery in the Herrera litigation, again quoted applicable portions of Howard's policies with Owners and reiterated:

> "This letter is to inform you that Owners continues to defend you in this action under a strict reservation of rights. Owners expressly reserves the right to withdraw defense coverage provided to JohnsonKreis if it is found there is no defense coverage available under our policies."

In that follow-up letter, Owners again cautioned that Howard's policies with Owners "may not provide defense and/or indemnity coverage for some or all of the allegations found in the [complaint in the Herrera litigation]." Specifically, it explained:

> "The [complaint] alleges that JohnsonKreis had sole authority/responsibility to operate the telehandler equipment and sole authority/responsibility to construct the box provided to Rosales[-Herrera] as an aide in moving the texture machine. If these allegations are accurate, there may be no defense or indemnity coverage for JohnsonKreis under the applicable policies."

In that same letter, Owners thus expressed its belief that, "[i]n light of

---

instead, was obligated to indemnify JohnsonKreis only for liability arising from Howard's work for JohnsonKreis.

the evidence revealed during discovery, it does not appear that Owners is under a duty to provide defense and indemnity coverage to JohnsonKreis."

Further communications from Owners to JohnsonKreis in September 2019, following an initial joint-settlement demand from the plaintiff in the Herrera litigation,[4] however, suggested that, at that time, "Owners ha[d] not withdrawn defense coverage" despite again disclosing the following:

> "The question of whether it was JohnsonKreis'[s] negligence (and not Howard['s]) that resulted in [Rosales-Herrera's] death, has been a coverage issue (between the carriers) since Owners and [CIC] received notice of the … accident. From the outset, Owners has provided JohnsonKreis defense coverage under a strict reservation of rights. Owners' July 18, 2018[,] reservation of rights letter clearly reserves Owners' right to challenge [CIC's] position that it does not owe its insured[,] JohnsonKreis[,] defense or indemnity coverage."

In November 2019, the parties to the Herrera litigation participated in mediation. At or around that time, CIC apparently proposed a settlement of the Herrera litigation with funds to be

---

[4]The demand letter issued in the Herrera litigation suggests that the plaintiff similarly believed that "Howard['s] … liability is not qualitatively of the same magnitude as JohnsonKreis's …."

contributed by both it and Owners; however, because that proposed settlement did not provide for the release of Howard from any future claim by JohnsonKreis stemming from Rosales-Herrera's death, both Owners and Howard declined the proposed settlement. Evidence in the record suggested that "JohnsonKreis was demanding that [CIC] get [the Herrera litigation] settled." Thus, in January 2020, CIC ultimately settled the claims against JohnsonKreis in the Herrera litigation, without Owners' or Howard's involvement or approval, for an amount within JohnsonKreis's coverage limits.[5] At that time, according to the testimony of Owners' representative, Owners had remained both "willing to pay indemnity" and "willing to negotiate" -- as to both the potential settlement of the claims in the Herrera litigation and the coverage dispute -- and was "actively negotiating," but, despite Owners' belief that settlement discussions remained ongoing, "[CIC] voluntarily decided to settle for only JohnsonKreis." Owners and Howard later entered into a separate settlement of the claims asserted against Howard in the

_____

[5]Follow-up correspondence from counsel for JohnsonKreis at or around that time suggested that JohnsonKreis contemplated a future "contractual indemnity/breach of contract action against Howard …." The release executed by JohnsonKreis in the Herrera litigation specifically excepted those anticipated claims.

Herrera litigation.

Subsequently, JohnsonKreis and CIC sued Howard and Owners in the Jefferson Circuit Court. In their complaint, JohnsonKreis and CIC alleged that Howard had breached the subcontract agreement by failing to comply with stated safety protocols and with the stated insurance requirements, which included specifically naming JohnsonKreis as an additional insured in Howard's policies with Owners. They nonetheless alleged that JohnsonKreis was an insured under those policies under the additional-insured endorsement and asserted a breach-of-contract claim against Owners based on Owners' initial position on coverage, which, they contended, prevented Owners from later denying coverage. Also, according to JohnsonKreis and CIC, the Herrera litigation specifically arose out of Howard's work on the project site because Rosales-Herrera had been employed by Howard, which, under the subcontract agreement, had been responsible for Rosales-Herrera's direction, supervision, and safety. In addition, the complaint asserted a bad-faith claim against Owners based on the allegation that Owners had denied JohnsonKreis coverage for the Herrera litigation without a legitimate reason. Finally, CIC sought "subrogation and/or contribution" from Howard and Owners

11

for the amounts it had expended settling the claims asserted against JohnsonKreis in the Herrera litigation. (Capitalization omitted.)

Owners moved for a summary judgment in its favor on all claims. In its motion, which it supported with numerous exhibits, Owners argued, among other things, that "JohnsonKreis is not entitled to indemnification under the Subcontract [agreement] because Alabama law does not allow for apportionment of damages among joint and several tortfeasors." Its motion included legal authority supporting that argument and further explained that the law also prohibited an apportionment of punitive damages -- the only damages available in a wrongful-death action.

While Owners' motion remained pending, Howard filed its own motion seeking a summary judgment in its favor. Howard's motion incorporated the arguments in, and the exhibits to, the pending Owners' motion but supplemented those filings. Based on the evidence, Howard maintained, it had fulfilled all contractual duties to defend and indemnify JohnsonKreis, which, it asserted, had suffered no damage as a result of the Herrera litigation.

Subsequently, JohnsonKreis filed its responses opposing the

12

pending summary-judgment motions. In particular, JohnsonKreis reiterated its claims that it was an insured under the additional-insured endorsement, that the Owners commercial general-liability policy was "primary," and that that coverage under that policy had been triggered by Rosales-Herrera's accident. It further contended that there remained a jury question regarding whether Howard's negligence had contributed to Rosales-Herrera's death. Finally, it argued that there was substantial evidence indicating that Owners had acted in bad faith by allegedly refusing to contribute to the settlement of claims against JohnsonKreis in the Herrera litigation. JohnsonKreis also filed its own motion for a partial summary judgment. In that motion, it noted that the subcontract agreement required Howard to maintain specified insurance coverages and to name JohnsonKreis as an additional insured under each policy. Citing the language of the additional-insured endorsement, it requested that the trial court enter a judgment in its favor determining as a matter of law that, among other things, Owners owed a contractual duty to provide coverage to JohnsonKreis.

CIC both adopted JohnsonKreis's responses and separately filed its own responses opposing the summary-judgment motions, to which it

13

attached evidentiary submissions seeking to establish that JohnsonKreis was an additional insured under Howard's policies with Owners and to create "a genuine issue of material fact as to whether Owners owes coverage to JohnsonKreis because of Howard's promise to JohnsonKreis to hold it harmless from the claims in the [Herrera litigation]." More specifically, it argued that there remained a dispute regarding whether JohnsonKreis was solely responsible for Rosales-Herrera's death. It further contended that it was authorized to directly pursue JohnsonKreis's claims against Owners, including its bad-faith claim, based on the language of the policies it had issued to JohnsonKreis.

After numerous other filings related to the pending motions for a summary judgment and a hearing, the trial court entered an order granting the motions for a summary judgment filed by Owners and Howard and denying the motion for a partial summary judgment filed by JohnsonKreis based on the following reasoning:

> "As the party seeking coverage, [CIC] has the burden to prove (1) Howard is liable to JohnsonKreis under the subcontract agreement to indemnify all sums paid to settle the underlying case, and (2) … Owners is liable to JohnsonKreis under the Additional Insured endorsement to indemnify all sums paid to settle the underlying case.

14

"To decide this issue, it is necessary for the Court to construe the agreements to determine the scope and extent of JohnsonKreis'[s] right to indemnity from Howard … and … Owners.

"Even if Howard partially caused Rosales-Herrera's death, the Court and jury in the underlying case could not have apportioned fault by assigning percentages as between JohnsonKreis and Howard. Punitive damages for wrongful death are not divisible in this state. Black Belt Wood Co. v. Sessions, 514 So. 2d 1249, 1260-64 (Ala. 1986). Nor can this Court now accept [CIC's] invitation to go back and renegotiate their settlement. The Court finds, as a matter of law, that … Owners and Howard … are entitled to a judgment in their favor.

"Given the Court's finding on the contract claims, it is unnecessary to address [CIC's] and JohnsonKreis'[s] alleged claims of bad faith, as to which breach of contract is an essential element. As a matter of law, the Court finds that there is no genuine issue of material fact that will support [their] claim[s] of bad faith and breach of contract."

(Emphasis added.) In its order, the trial court also denied as moot all other pending motions not expressly addressed.

JohnsonKreis and CIC appeal. This Court consolidated the appeals.

Standard of Review

" ' "This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We

15

apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."'

"Prince v. Poole, 935 So. 2d 431, 442 (Ala. 2006) (quoting Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004))."

Brown v. W.P. Media, Inc., 17 So. 3d 1167, 1169 (Ala. 2009). See also Ex parte Graham, 702 So. 2d 1215, 1221 (Ala. 1997) ("[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court's review is de novo.").

16

Discussion

On appeal in case no. SC-2023-0882, JohnsonKreis requests that we reverse the trial court's summary judgment on several grounds. Primarily, it argues that the subcontract agreement's provision requiring Howard's indemnification of JohnsonKreis on a proportional-fault basis was legally enforceable and that Howard was required to indemnify JohnsonKreis for amounts paid to settle claims asserted against JohnsonKreis in the Herrera litigation. On appeal in case no. SC-2023-0914, CIC both adopts that argument and also raises additional issues that do not appear to have been addressed in the trial court's summary-judgment order. Because we conclude that the sole basis cited by the trial court in support of summary judgment -- namely, its belief that a proportional-indemnification provision was, as a matter of law, legally unenforceable -- was erroneous, we reverse and remand. In doing so, we pretermit consideration of the remainder of the issues raised by JohnsonKreis in case no. SC-2023-0882 and by CIC in case no. SC-2023-0914.

In its brief to this Court, Owners acknowledges that "[it], in main, based its motion on the inability of a trial court to apportion damages

17

under the [Wrongful Death] Act." Owners' brief at 2. It also explains, and the trial court's order reflects, that the trial court agreed. Specifically, here, the sole holding identified in the trial court's order as supporting a summary judgment in favor of Owners and Howard was the trial court's determination that it lacked the ability, despite the provisions of the subcontract agreement, to reapportion the separate settlements reached by JohnsonKreis and Howard to conclude the Herrera litigation because, it held, Alabama law does not allow for the apportionment of damages in a wrongful-death case. In response, JohnsonKreis and CIC maintain on appeal that precedent from this Court expressly rejects the position of Owners and Howard regarding the validity of the proportional-indemnity provision included in the subcontract agreement. We agree.

It is true, as Owners argues, that the damages available on a wrongful-death claim under Alabama law are punitive in nature and that a wrongful-death plaintiff is entitled to a single recovery that "cannot be apportioned [by a jury] among joint tort-feasors," i.e., neither Alabama's wrongful-death statute, see § 6-5-410, Ala. Code 1975, nor our common law provides for indemnity or contribution in a wrongful-death case.

18

Tatum v. Schering Corp., 523 So. 2d 1042, 1045 (Ala. 1988). However, this is not a wrongful-death case -- it is a contractual dispute based on the language of a particular subcontract agreement -- and that general rule may be altered by an indemnification agreement between the parties. See Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38 So. 3d 722, 728 n.1 (Ala. 2009) ("Here, the indemnity agreement is part of a contractual relationship between two parties, and the dispute between them is not one of a claimant and a tortfeasor."). Specifically, as we most recently reiterated in Mobile Infirmary Ass'n v. Quest Diagnostics Clinical Laboratories, Inc., 381 So. 3d 1133 (Ala. 2023), this Court has recognized that "parties may enter into agreements that allow an indemnitee to recover from the indemnitor even for claims resulting solely from the negligence of the indemnitee," i.e., this Court has recognized that parties may freely reach "a contractual agreement providing a form of otherwise barred joint-tortfeasor contribution." 381 So. 3d at 1141. See also Holcim, 38 So. 3d at 729 ("[I]f two parties … agree that the respective liability of the parties will be determined by some type of agreed-upon formula, then Alabama law will permit the enforcement of that agreement as written."), and Parker Towing Co. v. Triangle Aggregates,

Inc., 143 So. 3d 159, 167 (Ala. 2013) ("The general rule in Alabama is that, in the absence of a statutory or contractual basis otherwise, there is no contribution or indemnity among joint tortfeasors." (emphasis added)). Cf. Industrial Tile, Inc. v. Stewart, 388 So. 2d 171, 176 (Ala. 1980) ("[I]f the parties ... enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld."). In fact, in Mobile Infirmary, supra, the main opinion specifically referenced the legality and the enforceability of an agreement requiring "that each party was required to indemnify the other for any proportional share of fault in the case of potential joint liability" -- almost the exact language included in the subcontract agreement at issue in this case. 381 So. 3d at 1143.

Thus, the subcontract agreement, to the extent that it required Howard to indemnify JohnsonKreis against liability for personal injury or death occurring on the project site to the proportional extent of Howard's responsibility for such injury and death, appears, contrary to the trial court's sole finding, to have been valid and enforceable under Alabama law. Accordingly, the trial court's decision is due to be reversed.

The trial court clearly pretermitted any consideration of the parties' evidentiary submissions and arguments regarding the interpretation and application of the disputed provisions of the subcontract agreement and the additional-insured endorsement. Although JohnsonKreis and CIC suggest that the trial court improperly conflated any limitations on Howard's duty to indemnify under the subcontract agreement with the breadth of coverage provided to JohnsonKreis as an additional insured under Howard's policies with Owners, we see no ruling on that issue. See Woodruff v. City of Tuscaloosa, 101 So. 3d 749, 755 (Ala. 2012) ("[I]t is generally the duty of a trial court to first consider all issues raised by the parties, and only after the trial court has done so is review by an appellate court possible."). We reverse the trial court's summary-judgment order and remand these matters for further proceedings consistent with this opinion.

SC-2023-0882 -- REVERSED AND REMANDED.

SC-2023-0914 -- REVERSED AND REMANDED.

Stewart, C.J., and Bryan, Sellers, and Mendheim, JJ., concur.

Cook, J., recuses himself.

21